**SOVEREIGN CAMP W. O. W. v. BROWN.**

No. 12331—Opinion Filed Oct. 30, 1923.

Rehearing Denied Jan. 15, 1924.

**1. Insurance—Monument as Part of Benefit in Life Policy—Action to Enforce.**

Where a life insurance policy, in addition to the amount provided for the beneficiary, makes a further provision of $100 for a monument for the insured, to be erected by the insurance company, and where after the death of the insured the company refuses to erect the monument as agreed, and where the beneficiary has contracted the indebtedness and becomes liable for the payment of the monument to the extent of $100, such beneficiary may maintain an action upon the policy for the amount provided for such purposes.

**2. Insurance—Life Policy—Statements in Application — Previous Medical Attendance.**

The mere calling into a doctor's office for some medicine to relieve a temporary in-

disposition cannot be considered an attendance by a physician or a consultation of a physician, within the meaning of an application for insurance in which the insured stated that he had not consulted or been attended by a physician for any disease or injury within five years of the date of such application.

**3. Same—"Sound Bodily Health."**

To be in "sound bodily health" is a comparative term, and a man with a temporary indisposition, such as to cause no apprehension of anything serious, can accept a policy of insurance "in sound bodily health" without being considered to have perpetrated any fraud upon the company or to have rendered his insurance contract void by reason of a violation of its terms.

**4. Same—Absence of Fraud—Direction of Verdict.**

Fraud is a fact to be proved, as any other fact, by competent evidence; and where there is no evidence in the record tending in any wise to establish that fact, which was the only defense relied upon in the case, it was not error for the court to direct a verdict for the plaintiff.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Kiowa County; Thomas A. Edwards, Judge.

Action by Allie Brown against Sovereign Camp of Woodmen of the World, a fraternal beneficiary association, to recover money judgment upon beneficiary certificate. Judgment rendered for the plaintiff. defendant brings error. Affirmed.

Ledbetter, Stuart. Bell & Ledbetter, for plaintiff in error.

Rummons & Hughes, for defendant in error.

Opinion by PINKHAM, C. This was an action instituted by the defendant in error. Allie Brown, as plaintiff, against plaintiff in error, as defendant, in the district court of Kiowa county, Okla., to recover $1,000, alleged to be due defendant in error under beneficiary certificate issued by plaintiff in error on life of Asa A. Brown, defendant in error being beneficiary in said certificate, and to recover the sum of $100 on account of an agreement of plaintiff in error in said certificate to erect a monument over the grave of said Asa A. Brown. to cost not less than $100, making total amount of recovery sought by defendant in error $1,100. and interest from August 13, 1919, at the rate of six per cent. per annum. and costs of suit;

Defendant in error in her petition alleges death of said Asa A. Brown on July 13.

1919, instead of August 2, 1919, as shown on face of said beneficiary certificate.

On May 5, 1920, plaintiff in error demurred to the second count in petition of defendant in error, seeking to recover $100 for failure to erect monument, alleging that said second count showed that defendant in error had no legal capacity to sue to recover said $100, and that said allegations were insufficient to entitle defendant in error to any relief or judgment against plaintiff in error on said second count.

Demurrers to the first and second causes of action were by the court overruled and excepted to by plaintiff in error.

The answer of plaintiff in error alleged that the policy sued on was based upon and issued in pursuance to written application made to plaintiff in error by deceased, Asa A. Brown, a copy of which application was attached to said answer; in said answer plaintiff in error alleged that at the time and date of execution of said application, and at all times after the execution of said application up to the time of death of Asa A. Brown, and for several years prior to the date and making said application said Asa A. Brown was afflicted with arterio sclerosis, or hardening of the arteries; that plaintiff in error did not know and had no notice at any time until after the death of said Asa A. Brown, that he had arterio sclerosis, and plaintiff in error would never have issued the cerificate sued on had it known of said Asa A. Brown being afflicted with said malady, and that on account of said application not speaking the truth when it stated that Asa A. Brown was in sound bodily health at the time of making the same, said beneficiary certificate was and is null and void.

Plaintiff in error further alleged in its answer that in said application appeared a question, reading:

"Have you consulted or been attended by a physician for any disease or injury during the past five years?"

—to which said question Asa A. Brown answered: "No."

Plaintiff in error further alleged that said answer "No" to said question was not true, and that the said Asa A. Brown had consulted with and was attended by a physician during the five years prior to the date of application, to wit five years prior to the 20th day of March, 1919; that the plaintiff in error did not know of said answer being untrue until after the death of the said Asa A. Brown, and had it known that said Asa A. Brown had consulted a physician, and had been attended by a physician for a disease for five years prior to March, 1919, plaintiff in error would not have issued the beneficiary certificate herein sued on.

Plaintiff in error further alleged that in said application on which the first certificate was issued, and in the place and stead of which said first beneficiary certificate the certificate herein sued on was issued, the said Asa A. Brown warranted that he was in sound bodily health, and that he had not consulted a physician, and had not been attended by a physician for five years prior to March 20, 1919, and on account of said statements being untrue, and on account of the provisions of said application and said certificate of insurance on which this suit was brought, said policy was and became null and void.

In said answer plaintiff in error also set up that the allegations in the second cause of action in the petition of the defendant in error showed that defendant in error was not entitled to recover $100 and interest on account of failure to erect a monument, and that on account of the allegations above set up of said Asa A. Brown having arterio sclerosis, or hardening of the arteries, and having made said untrue answer that he had not consulted and had not been attended by a physician for five years prior to the date of said application, there was no liability on the part of plaintiff in error to defendant in error for said $100.

The reply of defendant in error consisted of a general denial.

In a trial to a jury, after the conclusion of the testimony, plaintiff in error requested the court to instruct the jury to bring in a verdict for the defendant, which instruction was refused and plaintiff in error excepted. Plaintiff in error then requested the court to give the jury certain other instructions, one of which was to the effect that if the jury found from the evidence that one or more of the statements and answers contained in the application of Asa A. Brown for the policy of insurance or beneficiary certificate issued to him by the defendant in pursuance of an application were false, then in that event their verdict should be for the defendant, regardless of whether the said statements and answers or any of them were material or immaterial and regardless of whether or not the insured knew of the falsity of said statements and answers, or knew of them at the time they were made: and also the further instruction that:

"If you find for the plaintiff, you will return a verdict for an amount not to exceed $1,000."

—which instructions were by the court refused and excepted to by plaintiff in error.

Thereafter the court directed the jury to return a verdict for the defendant in error, and in accordance with said instruction the jury returned a verdict for defendant in error for $1,000, with interest at six per cent. from September 13, 1919, on her first cause of action, and the sum of $100 on her second cause of action, to which instruction of the court to the jury the plaintiff in error excepted.

Plaintiff in error also excepted to the finding of the verdict and the recording of the verdict. Motion for new trial was filed and overruled by the court, to which ruling plaintiff in error excepted, and gave notice of appeal to this court. Judgment by the court was duly rendered in accordance with the said verdict.

A number of assignments of error are set forth in te motion for new trial, and in the petition in error, all of which may be considered under the following propositions, which are raised and discussed in the brief of plaintiff in error: First, did the trial court err in instructing a verdict for defendant in error and against plaintiff in error for the $100 for the erection of the monument? Second, Did the trial court err in instructing a verdict for defendant in error for the $1,000? Third, Did the trial court err in excluding the testimony of the witness Dr. Huffman?

The record disclosed that it was agreed and stipulated between the parties in the case that the policy of insurance attached to the petition was issued by the defendant upon the life of Asa A. Brown, and that the plaintiff is the person named therein as beneficiary: that all the terms and conditions of the policy as to the payment of premiums were complied with by Asa A. Brown during his lifetime and up to his death, which occurred on July 13, 1919; that after the death due proof of death was made and furnished to the company, and that no part of the insurance, either that sued upon in the first or second causes of action set up in the petition has ever been paid by the company.

The petition of defendant in error, in the second count thereof, alleges the failure of plaintiff in error to erect a monument as agreed in the policy, and further alleges that defendant in error had contracted and become liable for the sum of $100 for the erection of a monument for the insured.

The defendant in error testified that after the death of her husband she contracted for the erection of a monument to be placed at his grave, for which she agreed to pay $100. There is no contradiction of this testimony disclosed in the record.

In the case of Grand Lodge of the United Brothers et al. v. Carroll, 73 Oklahoma, 174 Pac. 767, this court held:

"Where a life insurance policy, in addition to the amount provided for the beneficiary, makes a further provision of $50 for burial expenses, and the beneficiary has contracted the indebtedness and became liable for the payment of the burial expenses, such beneficiary may maintain an action upon the policy for the amount provided therein for such expenses."

It is contended by plaintiff in error that in the case cited, supra, it was shown by the record that defendant in error, Carroll, in that case the mother of the insured, contracted and became liable for the burial expenses of the insured; that the insured was buried, and his burial expenses had been incurred; while in the instant case no claim was made by defendant in error that the monument had been erected, and therefore plaintiff in error could not be made liable to defendant in error for a monument that may never be erected. We think the undisputed facts disclosed by the record, that the plaintiff in error failed and refused to erect a monument, which it had agreed to do, and that the defendant in error had contracted and become liable for the sum of $100 for the erection of a monument at the grave of her husband, brings the defendant in error clearly within the rule announced in the case cited, and that the distinction sought to be drawn between that case and the case at bar is not tenable.

It cannot be assumed that because at the time of the trial the monument in question had not been erected, that therefore it might never be erected, where there is a total absence of evidence in the record tending to show that the defendant in error had not in good faith contracted and become liable for the erection of the monument.

We conclude that the trial court did not err in instructing the jury to allow a recovery to the defendant in error upon her second cause of action in the sum of $100.

It is next contended that the action of the trial court in instructing a verdict for defendant in error for the amount of the policy was erroneous; and it is also further contended that the trial court erred in excluding from the consideration of the jury the evidence of Dr. Huffman, whose testimony it is argued would have shown and tended to show that the deceased had arterio sclerosis prior to the time the appli-

cation was made for the policy herein sued on and at the time of his death, and that the deceased answered incorrectly the question whether or not he had consulted or had been attended by a physician for any disease or injury during the five years immediately prior to the making of the application in March, 1919, on account of, and in pursuance of which application, the policy herein sued on was issued.

These propositions may be considered together. Plaintiff in error's defense was based entirely upon the claim that Asa A. Brown, the insured, incorrectly answered the following question contained in his application and his statement to the medical examiner, to wit: "Have you consulted or been attended by a physician for any disease or injury during the past five years?" to which the said Asa A. Brown answered: "No"; and the further claim that the insured warranted that he was in sound bodily health at the time of making the said application. It is contended that both statements were untrue, and that the testimony of Dr. Huffman was sufficient to take the case to the jury.

The most that can be said of Dr. Huffman's testimony is that on one or two occasions prior to the time of the said Asa A. Brown's application, he met the insured "in the back end of a drug store," where the insured complained of not feeling well, and Dr. Huffman gave him a treatment "to establish equilibrium of the circulation," and on one other occasion after the insured had made his application, when he visited him some three weeks before he died, upon which occasion he testified the only treatment he ever gave the insured was for disturbance in his circulation.

There is no evidence in the record of any kind or character tending to show that Dr. Huffman was ever employed by the insured, or that he ever charged a fee for any services rendered the insured.

Dr. Huffman was asked what kind of treatment he prescribed; he answered: "Well, it was a treatment—perhaps to establish a little equilibrim of the circulation —I guess you would call it—." He then stated that he saw Asa A. Brown in the drug store there quite frequently; that they often discussed things back and forth, that he couldn't say just how many times, or even more than once or twice; that he couldn't be positive whether he was consulted professionally by Dr. Brown prior to November, 1918; that he didn't know whether he was or was not. That he couldn't say positively that he had prescribed for

him more than three or four times; that his treatment was usually to "establish equilibrium of the circulation"; that the insured came to his office three or four weeks before he died, and that he was suffering from the effects of arterio sclerosis; that he had not treated him for that disease definitely, as one would a marked case of arterio sclerosis; that when he first saw the insured in the fall of 1918, he made a casual examination, not a blood pressure test.

Upon cross-examination he stated that in the first examination he merely felt the insured's pulse, and that the first definite, complete examination he made was "a short time, a very short time, before his death."

Dr. Huffman being recalled by the plaintiff in error further testified as follows:

"Q. Do you know the cause of Dr. Asa A. Brown's death?"

—to which he answered:

"A. As far as I know, arterio sclerosis."

Counsel for defendant in error objected to the answer and asked that it be stricken out as not responsive. which objection was sustained by the court and excepted to by the plaintiff in error.

Dr. Huffman was again recalled by the plaintiff. in error, and the following question was propounded to him:

"Q. Just tell the jury what you treated the Doctor for beginning about the 16th day of June, 1919"

—to which he answered:

"A. Well, the only treatment I ever gave him was for the disturbance of his circulation."

Counsel for defendant in error objected to the testimony offered as incompetent, irrelevant, and immaterial, which objection was sustained by the court and excepted to by plaintiff in error.

At the request of counsel for plaintiff in error the jury was excluded, and Dr. Huffman was further examined by defendant in error. He was asked, that considering that Asa A. Brown was a man 52 years old, and from the witness' examination of him in June, 1919. what his opinion was as to the length of time that he had had arterio sclerosis, to which the witness answered:

"A. I don't know in regard to this man's past history, but if he was a man who overate, overdrank, had a tendency of rheumatism, and was pretty corpulent, and those things, they indicate arterio sclerosis, but

how far back he had those symptoms I don't know."

Counsel for defendant in error. objected to the offering of the above testimony, which was sustained by the court and excepted to by the plaintiff in error.

There is nothing in Dr. Huffman's testimony tending in the slightest degree to support the contention made that the insured answered untruthfully when in March, 1919, he stated in his application, that he had not consulted or been attended by a physician for any disease or injury within the past five years, and that he was at the time of making his application in sound bodily health. There is nothing in Dr. Huffman's testimony, as we view it, of evidentiary value, and it is far from sufficient to charge the insured with consulting or having been attended by a physician for any disease or injury prior to the date of his application, or as having made an untrue statement in his application, when he said that he was at that time in sound bodily health, within the meaning of the policy sued on, or within the rule applicable to the facts in this case as announced by many decisions.

"A question whether the applicant has consulted physicians, calls only for, consultations in respect of matters material to the risk, and not for consultations in respect of some indisposition not properly called a disease." (Louise E. Billings v. The Metropolitan Life Ins. Co., 70 Vt. 477.)

In the case of Greenwood v. Royal Neighbors, 118 Va. 329, it is said:

"The phrase 'good health', as used in its common and ordinary sense by a person speaking of his own condition, undoubtedly implies a state of health unimpaired by any serious malady of which the person himself is conscious. He does not mean that he had no latent disease of which he is wholly unconscious. If by the phrase 'good health' an insurance company desires to exclude every disease, though latent and unknown it must do so by distinct and unmistakable language."

It is doubtless competent for a life insurance company in its policies to take the expression 'sound bodily health' out of its common meaning and make it exclude every disease, whether latent and known or not (assuming that any person would ever accept a policy of that kind), but it must do so in distinct and unmistakable language. The mere statement by a party that he warrants himself to be in sound bodily health is not sufficient. Greenwood v. Royal Neighbors, supra.

"Good health means apparent good health, without any ostensible or known, or felt symptom of disorder, and does not exclude the existence of latent unknown defects." (May on Insurance, section 295, p. 625.)

Merely calling into the office of a doctor for some medicine to relieve a temporary indisposition, or simply to ascertain if there is any ailment or complaint about the person, and for nothing more, is not a consultation by a physician. Billings v. Metropolitan Ins. Co., 70 Vt. 477. Neither is it sufficient to show that the insured was not in 'sound bodily health' when he so stated in his application. The fact that a man had the incipient elements of a disease (the seeds of death) in him, which may or may not shortly spring up into fatal disease, does not mean that he does not fulfill the meaning of the term "in good health". Sovereign, Camp of Woodmen of the World v. Jackson, 57 Okla. 318, 157 Pac. 92; May on Insurance, 295; Scofield v. Metropolitan Life Ins. Co., 79 Vt. 161; Woodmen of the World v. Lockhart, 28 Tex. Civ. App. 486.

The answer of the insured that he had not consulted or been attended by a physician for any disease, and his statement at the time of the application that he was in sound bodily health is not shown by this witness to be false.

It is further contended by plaintiff in error in its brief that the testimony of Dr. Miles would have sustained a verdict by the jury that the deceased was suffering from arterio sclerosis at the time of his death. Proof that the insured was suffering from arterio sclerosis at the time of his death would not be proof that his statement made in his application that he was in sound bodily health was untrue at the time when it was made.

Dr. Miles was the physician who attended the deceased during his last illness. His testimony, in substance, is as follows: That in the latter part of June or the first of July, 1919, he attended professionally Dr. Asa A. Brown, the insured; that he was informed by the insured, who it appears was a veterinary, that he had been injured while operating on a horse, that he had been kicked by a horse on his left side just above the heart and lungs to the extent that he was spitting up considerable blood, and there were blood clots in the air cells and arteries of the lungs. That the injury occurred about 30 days before he died. That he would not say positively whether he was or was not suffering from arterio sclerosis; that he was Dr. Brown's family physician, but had never been called on before to treat him for any ailment.

Dr. Stewart, the medical examiner, who propounded the questions contained in the application, was also produced as a witness, and testified, in substance, that he had been the examining physician of the plaintiff in error for ten years. That he made the examination of Asa A. Brown for membership in the plaintiff in error society, and for a beneficiary certificate. That at the time of the examination the said Asa A. Brown was not suffering from any disease that he could ascertain. That he had had actual acquaintance with Asa A. Brown for five or six years; that he was very robust in appearance, weighing something like 175 or 180 pounds, and looked the very picture of health.

The defense of the plaintiff in error being, as before stated, that Asa A. Brown, the insured, had not told the truth when he stated in his application that he had not consulted or been attended by a physician for any disease or injury during the past five years and that he was at the time of his application in sound bodily health, the burden was on the plaintiff in error to prove by competent evidence its allegations.

"Fraud is a fact to be proved as any other fact, by competent evidence; and, where there is no evidence in the record tending in any wise to establish that fact, which was the only defense relied upon in the case, it was not error for the court to direct a verdict for the plaintiff." Eminent Household of Columbian Woodmen v. Parker, 37 Okla. 569, 133 Pac. 48.

We conclude that the trial court committed no error in excluding from the jury the testimony of Dr. Huffman.

After a thorough examination of the entire record, we are constrained to hold that there is no material evidence in the record, showing or tending to show that the insured answered incorrectly the questions propounded to him in his application to the effect that he had not consulted or been attended by a physician for any disease or injury during the past five years, and that he was in sound bodily health at the time of making his application for beneficiary certificate.

The court, we think, did not err in instructing a verdict for the defendant, and in our opinion the judgment should be affirmed.

By the Court: It is so ordered.