## NATIONAL LIFE & ACCIDENT INS. CO. v. SHERMER.

No. 22699.   Opinion Filed Dec. 20, 1932.

Watts & Wall, for plaintiff in error.

Roy Frye and W. O. Bruton, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Sequoyah county in favor of the defendant in error, the plaintiff in that court. The parties will be referred to as they appeared in the trial court.

The plaintiff instituted this action to recover a money judgment on a policy of life insurance issued by the defendant on the life of Eulalah V. Shermer. The defense offered to the action was fraud, concealment, and misrepresentations of the insured as to the condition of her health in her application for insurance, and that she was not in good health at the time of the delivery of the policy.

The defendant contends that the trial court erroneously instructed the jury in defining "sound health." On that point the court instructed the jury as follows:

"You are instructed that by 'sound health' as used in the insurance policy sued upon means a state of health free from known disease or ailment that affects seriously the general healthfulness of the system and not temporary disturbance or disorders."

The defendant contends that if the insured was not in sound health on the date of the application and knew it, or if she was not in sound health on the date the policy was delivered, whether she knew it or not, the defendant would not be liable on the policy or otherwise except for the return of the premiums paid. It contends that the jury was not properly instructed as to the meaning of "sound health," and that for that reason the verdict does not settle the question as to whether or not the insured, in good faith, thought herself to be in sound health when the application was made. The attack upon the instruction is on the words "known disease or ailment." A requested instruction, which was denied by the court, was as follows:

"You are instructed that the expression

'sound health' used in the insurance policy sued upon herein means a state of health free from any disease or ailment that affects seriously the general soundness and healthfulness of the system, and not merely such temporary disturbances or disorders, which yield readily to treatment and do not tend to weaken or undermine the constitution."

The requested instruction has the effect of instructing the jury that if it found that the insured was not in good health at the time she signed the application, it could find her statement to be false and fraudulent, whether she knew of her condition or not. That effect is in conflict with former holdings of this court.

In Sovereign Camp W. O. W. v. Brown, 94 Okla. 277, 221 P. 1017, 1021, this court quoted with approval from the case of Greenwood v. Royal Neighbors, 118 Va. 329, wherein it was said:

"The phrase 'good health,' as used in its common and ordinary sense by a person speaking of his own condition, undoubtedly implies a state of health unimpaired by any serious malady of which the person himself is conscious. He does not mean that he had no latent disease of which he is wholly unconscious. If by the phrase 'good health' an insurance company desires to exclude every disease, though latent and unknown, it must do so by distinct and unmistakable language."

This court therein held:

"To be in 'sound bodily health' is a comparative term, and a man with a temporary indisposition, such as to cause no apprehension of anything serious, can accept a policy of insurance 'in sound bodily health' without being considered to have perpetrated any fraud upon the company or to have rendered his insurance contract void by reason of a violation of its terms."

That holding was cited with approval in Mid-Continent Life Ins. Co. v. House, 156 Okla. 285, 10 P. (2d) 718.

In New York Life Ins. Co. v. Smith, 133 Okla. 256, 271 P. 1037, this court held:

"In a suit on an insurance policy, where it is contended that a false and fraudulent misrepresentation or concealment of a material fact by the insured has rendered the contract for insurance void, and where the evidence is conflicting, or where different inferences may be legitimately drawn from the evidence, the question should be submitted to the jury under instructions which take into account the materiality of the misrepresentation and the fraudulent purpose or intent of the insured to deceive."

The objection made to instruction No. 5 is that the court failed to instruct the jury that, if it found from the evidence that at the time the application for insurance was made or at the time the policy was delivered the insured was afflicted with chronic nephritis, it should find for the defendant. That contention is based on the terms of the policy which require the insured to be in good health at the time the policy is delivered in order to make the policy binding and the insurer liable. That, in effect, would make the statements in the application amount to a warranty and a condition precedent to any effective contract of insurance. The policy does not provide that "all statements made by the insured shall, in the absence of fraud, be construed as representations and not warranties," as provided in many insurance policies, but section 10519, O. S. 1931 (section 6728, C. O. S. 1921) so provides, where no previous examination was had, as in the instant case.

In Mid-Continent Life Ins. Co. v. House, supra, there was a similar provision in the application, which provided that no liability would occur until the policy had been accepted by the insured during her lifetime and while she was in good health. In that case this court held:

"* * * That such a provision is for the benefit of the insurer to protect such company against a contingency which might arise in that interim during which the insured might become seriously ill, suffer a severe injury impairing her health, and to guard against the delivery of such policy in the event of the death of the insured."

This court did not hold, as contended herein, that the good health of the insured, at the time of the delivery of the policy, was a condition precedent to any obligation on the part of the defendant. This court held:

"When a life insurance policy containing such a provision as set forth in paragraph 1 of the syllabus has been delivered and the first premium paid, the burden of proof is upon the defendant insurance company to prove that the policy was delivered while the insured was not in good health."

The defendant, in attempting to show the condition of the insured's health at the time of the signing of the application and at the time of the delivery of the policy, offered testimony of Dr. Charles F. Holt, as follows:

"Q. Then she could not have been in sound health either on the 5th day of December, 1927, or on November 21, 1927? A. I would hate to—that is my opinion, with blood pressure of—I pay more attention to blood pressure—with blood pressure of

240 over 120—I wouldn't think so. I would not say it wasn't possible."

The disease complained of was that of nephritis. Dr. T. F. Wood testified that the insured could not have been in sound health on November 21, 1927, if she had chronic nephritis four months before. The witness testified that it was possible that the insured could have been suffering with chronic nephritis or acute nephritis on December 5, 1927, and not know anything about it, and that it was not usual for a patient to detect the oncoming of chronic nephritis without the consultation of a physician.

Dr. A. A. Hicks testified, as follows:

"Q. Could you say, doctor, basing your answer on your experience as a physician, and your laboratory tests, that Mrs. Shermer—tests of her urine and swelling of her hands and feet, being very tired and having difficulty with her vision, a week or two before December 30, 1927—what would be your opinion whether or not she was of sound health on the 5th day of December, 1927? A. Well, I could not say. She could have been in good health and gotten that way pretty suddenly. With nephritis the swelling of the hands and feet might occur in three or four days—they may have a tired feeling and it may clear up and the swelling disappear. The condition might disappear."

The witness G. L. Loftin, the agent for the defendant company, who took the application for the insurance on November 21, 1927, and who delivered the policy dated December 5, 1927, testified that he saw the insured each time; that he had seen her before, and that he observed nothing that would lead him to believe that she was suffering from any chronic disease. Other witnesses who knew the insured and who had had occasion to be with her from time to time testified to the same effect.

The defendant contends that the representations as to health were untrue, willfully false, fraudulent, and malicious, and made in bad faith. The question of the falsity of the statements contained in the application for life insurance and the intent of the applicant in making them were questions for the jury. The defendant assumed the burden of proving, not only that the policy was delivered while the insured was not in good health, but that the statements of the insured were willfully false, fraudulent and misleading. Continental Casualty Co. v. Owen, 38 Okla. 107, 131 P. 1084; New York Life Ins. Co. v. Stagg, 95 Okla. 252, 219 P. 362. The verdict of the jury is to the effect that it failed to meet that burden. There is competent evidence in support thereof.

We find no error in the judgment of the trial court, and that judgment is affirmed.

CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., absent.

Note.—See under (2, 3) annotation in 40 A. L. R. 666; 14 R. C. L. 1068, 1069.