## NATIONAL LIFE & ACCIDENT INS. CO. v. WARE.

No. 22792.    Oct. 16, 1934.

Rehearing Denied Dec. 4, 1934.

William M. Franklin, for plaintiff in error.

Earl Sadler and Howard B. Fisher, for defendant in error.

PER CURIAM. The plaintiff instituted this action to recover a money judgment on a policy of life insurance issued by the defendant on the life of Gene Carolyn Ware, the infant daughter of the plaintiff, Bessie Mary Ware, who was named as beneficiary therein. The defense to the action was fraud, deceit, and misrepresentations of the plaintiff as to the health of the insured, and that the insured was not in "sound health" at the time of the execution of the policy.

The policy was executed in pursuance of a written application made by the plaintiff, but which was not attached to or made a part of the policy, and upon physical examination made by a physician selected and authorized by the insurance company. The application, among other things, contained this question and answer:

"24. What medical or surgical attention have you had in the last five years? No."

Certain premiums were paid to the agent with the application. The policy when issued subsequent to the application and medical examination contained this express provision:

"No obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health. Should the proposed insured not be alive or not be in sound health on the date hereof, any amount paid to the company as premiums hereon shall be returned."

The evidence showed without controversy that some six months prior to the date of the application the insured child .vomited and the plaintiff consulted one Dr. Lowry about it, who took the child out to his hospital for observation, but she did not go to bed or exhibit any serious symptoms, and the doctor did not disclose the result of his diagnosis; in fact, said he did not know what was the cause of the condition, but recommended a diet, which was followed, and the child apparently recovered. At the time of the application she was in apparent sound health, going to school, playing with other children and was robust and two pounds overweight for her age.

The plaintiff testified that the manner of making the application was, that the agent of the defendant would read the questions, she would announce her answers, and he would put them down, and when finished she signed it without reading it, assuming that he had correctly propounded the questions. That the agent read the question as if it stated, "Has she ever had any contagious diseases or surgical operations?" To which she answered "No," and truthfully so. The agent denied this.

The insured child died about six months after the execution of the policy after an illness of several days. The cause of death was a puzzle to the attending physicians, and apparently out of their own curiosity they held a post mortem autopsy. Dr. Lowry testified that he did not participate in the autopsy, but learned from the pathologists of the hospital that the child. had gastric hemorrhages and an enlarged spleen. This witness gave it as his opinion, based

upon the autopsy and his previous connection with the case, that the child was not in good health at the time of the execution of the policy. The plaintiff testified that she knew nothing of the condition until after the death of the child. That the child was in apparent good health, eating regularly, attending school regularly, and was strong and robust.

On this record the defendant requested a peremptory instruction for a verdict in its behalf on the theory that the uncontroverted evidence was that the plaintiff's answer to question 24 was false and material to the risk, and that the uncontroverted evidence was that the insured was not in sound health at the date of the execution of the policy, and that the policy was a conditional contract of insurance subject to avoidance at any time independently of the question of fraud and acceptance of the risk upon proof that the insured was not in sound health when it was issued. The defendant also requested the court to submit to the jury the question of whether the insured was, as a matter of fact, in sound health when the policy was issued, independently of the question of fraud or intent to deceive or knowledge of the plaintiff as to the latent malady of which she may have died.

The court refused these requests and submitted the case to the jury upon the question of fraud. We have examined the instructions which were given, and find that they fairly submit this question to the jury. The evidence is sufficient to sustain the verdict. In an action at law, where there is competent evidence which reasonably tends to support the verdict of the jury, and no prejudicial errors are shown in the instructions of the court or the admission of evidence, the finding of the jury will not be disturbed on appeal.

However, it is seriously contended that there was no final acceptance of the risk by the insurance company; that the policy was a conditional contract of insurance subject to be avoided at any time, independently of the question of fraud, upon proof that the insured was not in sound health as a matter of fact at the time of execution of the policy; that the question of whether or not the insured was an insurable risk remained an open question to be determined at any time, even by post mortem autopsy after the policy had matured into a mortality claim.

We are unable to agree with this contention. The application was made on July 31st. The medical examination was made a few days later. The policy was issued on August 19th. The provision above quoted, to the effect that the company assumed no liability prior to the date thereof, and not then unless the insured was alive and in "sound health," and agreeing to return the premium which had been collected, was intended to protect the company against any change of condition or discovery of any additional information material to the risk in the interim between the application and issuance of the policy. The phrase "sound health," as used, means a state of health unimpaired by any serious malady of which the insured or applicant had knowledge. If an insurance company desires to exclude from the coverage of the policy latent and unknown bodily conditions, they should use more apt language for that purpose. National Life & Accident Insurance Co. v. Shermer, 161 Okla. 77, 17 P. (2d) 401; Pritchard v. American National Insurance Company of Galveston, Tex., 139 Okla. 248, 281 P. 774.

In the case of Sovereign Camp, W. O. W. v. Brown, 94 Okla. 277, 221 P. 1017, this court quoted with approval from the case of Greenwood v. Royal Neighbors, 118 Va. 329, 87 S. E. 581, wherein it was said:

"The phrase, 'good health,' as used in its common and ordinary sense by a person speaking of his own condition, undoubtedly implies a state of health unimpaired by any serious malady of which the person himself is conscious. He does not mean that he has no latent disease of which he is wholly unconscious. If by the phrase 'good health,' an insurance company desires to exclude every disease, though latent and unknown, it must do so by distinct and unmistakable language."

In the syllabus of Sovereign Camp W .O. W. v. Brown, supra, this court held:

"To be in sound bodily health is a comparative term, and a man with a temporary indisposition such as to cause no apprehension of anything serious can accept a policy of insurance in sound bodily health without being considered to have perpetrated any fraud upon the company, or to have rendered his insurance contract void by reason of a violation of its terms."

In the case of Mid-Continent Life Insurance Co. v. House, 156 Okla. 285, 10 P. (2d) 718, this court said:

"In an application for insurance, which provides that the company shall not incur any liability upon said application until the policy has been issued by the company and the first premium has actually been paid to and accepted by the company and the policy has been accepted by said insured during her lifetime and good health, held, that

such a provision is for the benefit of the insurer to protect such company against a contingency which might arise in that interim during which the insured might become seriously ill, suffer a severe injury impairing her health, and to guard against the delivery of such policy in the event of the death of the insured."

In the case now under consideration, there was no proof that the insured was not in "sound health" at the time of the execution of the policy as that phrase is defined in the case above cited. The instruction requested by the defendant and refused by the court did not take into consideration the question of intent or purpose to deceive or knowldege by the insured, or the applicant, of the latent bodily infirmity of the insured, which was disclosed by the autopsy. There was no error in refusing this instruction. We think the reasoning of the Supreme Court of Iowa, in the case of Roe v. National Life Insurance Association, 115 N. W. 500, is not subject to any rational criticism. Therein the court said:

"In other words, the insurer having elected to investigate the physical condition of the insured is bound by the conclusion of its authorized agent and specialist unless this has been induced by fraud or deceit on the part of the insured. * * * This merely requires the parties to deal at arm's length when contracting, and without reservation on the part of the insurer of the right to reinvestigate the same subject after the insured has departed this life with the design of depriving the beneficiary of the bounty intended. * * * A company or association is entitled to no more consideration than an individual in being compelled to suffer the consequences of bad bargains; and if an applicant for insurance, without practicing deception either by false representation or concealing facts he should disclose, can obtain a policy of insurance on his life, even though not a good risk, we know of no reason for not enforcing performance of its conditions."

There are decisions of other jurisdictions construing contracts very similar to the one now before the court, which have held that such contracts were conditional contracts of insurance subject to be avoided by reinvestigation of the insurability of the risk at any time. The rule announced in these cases appears to us to be unsound and an unfair interpretation of the contract, not in accordance with the real intent of the parties to the contract and contrary to the previous expressions of this court on the subject.

We find no error in action of the trial court in refusing to direct a verdict for the defendant, and in refusing to give the instruction requested by the defendant.

During the course of the trial, and while the witness Dr. Lowry was being examined, the defendant offered in evidence a statement signed by the witness pertaining to the cause of death and medical treatment of the insured. The statement was excluded over the objection of the defendant. The statement was not offered for the purpose of impeachment, but as direct evidence of the facts therein stated. At a subsequent stage of the proceedings, the statement was admitted, and the witness was allowed to testify directly from the witness stand fully as to all the matters contained in the statement offered. The error, if any, in first excluding the statement was cured and became harmless.

Finding no error in the record, the judgment of trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Everett Petry, J. H. Maxey, and George S. Ramsey in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Petry and approved by Mr. Maxey and Mr. Ramsey, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.