[Civ. No. 20473. Second Dist., Div. One. Jan. 24, 1955.]

GLADYS HUETTE BRUBAKER, Respondent, v. BENEFICIAL STANDARD LIFE INSURANCE COMPANY (a Corporation), Appellant.

Moss, Lyon & Dunn, Gerold C. Dunn and Henry F. Walker for Appellant.

Ben F. Ruffner, Nebron & Blanford and Irwin J. Nebron for Respondent.

DRAPEAU, J.—The material facts in this case are not disputed. Its decision turns upon the answer to the following legal question: Is an insurance policy void when the insured at the time of its delivery was mortally afflicted with cancer, although when application for the insurance was made, when the insured was examined by the insurance company's doctor, and when the policy was issued and delivered neither the insured nor the insurer knew of the serious character of the illness?

Plaintiff Gladys Huette Brubaker is the widow of Walter B. Brubaker. She brings this action against the defendant insurance company to collect $7,000 on two policies of insurance upon the life of her deceased husband.

The insurance company would not pay, and contended that it is not liable because the insured was not in good health at the time the policies were delivered. As stated, this is the determinative question in the case, neither fraud nor misrepresentation being an issue.

The facts, stated chronologically, are as follows:

March 8, 1952, Mr. Brubaker went to see Dr. Robert E. Williams, of Camarillo, California. Mr. Brubaker complained that he had been having abdominal pain for a little over a week. The doctor found upon examination that his patient had tenderness in his abdomen, more especially in the lower right portion, where there was an old scar apparently from an appendectomy. There were some small, tender, firm nodules in the right portion of the abdomen.

The doctor diagnosed Mr. Brubaker's illness as acute gastroenteritis. X-ray pictures taken of Mr. Brubaker's abdomen showed no abnormalities.

March 14, 1952, Mr. Brubaker signed what the insurance company designated part one of an application for the insurance here in question. The gist of Mr. Brubaker's answers to the questions in the application was that he was in good health and knew of no condition which would make him a poor life insurance risk. All of his statements were made in good faith, and were true so far as he then knew.

March 25, 1952, Mr. Brubaker executed part two of the application, the gist of which was substantially the same as part one. In this part of the application Mr. Brubaker disclosed that he had consulted Dr. Williams for the disorder diagnosed by the doctor as gastroenteritis.

On this same date, March 25, 1952, Dr. Williams again made a physical examination of Mr. Brubaker. This time

the doctor was acting as medical examiner for the insurance company. At that time the doctor could find no change in Mr. Brubaker's condition. So he reported to the insurance company, with a notation that Mr. Brubaker was "quite healthy."

March 28, 1952, the insurance company issued the two policies here in question, and delivered them to Mr. Brubaker April 11, 1952. Mr. Brubaker's wife was beneficiary in both policies.

April 9, 1952, Mr. Brubaker again went to see Dr. Williams. He complained that he was again having abdominal pains. This time the doctor sent his patient to a hospital for X-ray pictures, with the use of barium in the bowel. As a result of these tests an exploratory operation of the abdominal cavity was recommended.

April 24, 1952, the exploratory operation was performed. It was then discovered for the first time that Mr. Brubaker had a cancer of the first portion of the large bowel, and that the disease had spread to lymph nodes throughout the abdomen.

It was not until after the surgery that Dr. Williams told Mr. Brubaker what was really the matter with him, although the doctor testified on the trial that "in retrospect" he believed that all of Mr. Brubaker's symptoms were due to cancer.

November 4, 1952, Mr. Brubaker died.

January 26, 1953, the insurance company tendered to Mrs. Brubaker all premiums received, amounting to $475.83.

The superior court found that at the time of the application, the medical examination, and the delivery of the policies, decedent was acting in good faith, without any knowledge of any cancerous condition or of any other serious disease or disorder of his body, that at the time of Mr. Brubaker's death all premiums had been paid, and that all other things required in the policies of him or of his widow had been done.

As a conclusion of law the court found that the insurance company was bound by the policies, and that the widow was entitled to judgment for $7,000.

Defendant appeals from the judgment that followed.

The insurance company contends:

(1) That no disclosure of his cancerous condition was made in decedent's application for insurance; and (2) That delivery of the policy during good health was a condition precedent, which is not present in this case.

 In support of the first contention, it is asserted that the failure of the insured to mention in the application that he "had small, tender, firm nodules in the right lower portion of his abdomen" voids the policy.

This contention is without merit. It would be a strange medicolegal rule to say that nodules under the skin are certain evidence of cancer of the bowel, and that the presence of such nodules must be noted in every application for insurance, at the peril of the beneficiaries. Dorland's American Medical Dictionary defines the word "nodule" as coming from the Latin *nodulus,* a little knot, meaning a small boss or node. To state the contention is to refute it.

The second contention does have merit. For the final ruling in this case will set the pattern in California in an important and interesting phase of insurance law. This contention has been given careful study and consideration.

The insurance company argues that the clause in the application for the policy reading as follows is a condition precedent:

"I hereby declare and agree . . . that this application (Part I and Part II) shall form a part of any policy of insurance issued, . . . that any policy issued shall not take effect unless and until the full first premium has been paid and the policy delivered to me during my good health, . . . and during my lifetime . . ."

In an able and comprehensive memorandum of opinion, the trial judge points out that there are divergent lines of decision and reasoning in the United States with respect to the situation here, and that this is apparently a case of first impression in California.

What may be termed the Massachusetts rule supports the contention of defendant that unless the insured is in actual good health at the time of delivery of a policy of life insurance, the insurer is not liable on the policy, at least until under our law, or by a provision in the policy, it is incontestable. (See Ins. Code, § 10953.3.)

In other states a rule to the contrary has been established and applied. This rule may be stated as follows: The insurer, having the advantage of a medical examination, and dealing with an insured who is apparently in good health, and who is acting in good faith, will not be permitted to avoid the contract if it should develop after delivery of the policy that the insured had actually been afflicted with a dangerous and serious disease.

This situation in the law of insurance has been of great interest to judges, lawyers, and law and textbook writers. A partial list of cases, texts, and articles, follows:

*The Massachusetts Rule—actual good health. Wright* v. *Federal Life Ins. Co.,* (Tex.Com.App.) 248 S.W. 325; *Packard* v. *Metropolitan L. Ins. Co.,* 72 N.H. 1 [54 A. 287]; 1 Appleman Insurance Law and Practice, chap. 8.

*The rule contrary to the Massachusetts rule—apparent good health. Prudential Ins. Co. of America* v. *Kudoba,* 232 Penn. 30 [186 A. 793]; *Thompson* v. *Prudential Ins. Co. of America,* 196 Minn. 372 [265 N.W. 28]; *National Life & Accident Ins. Co.* v. *Ware,* 169 Okla. 618 [37 P.2d 905]; *Chinery* v. *Metropolitan Life Ins. Co.,* 112 Misc. 107 [182 N.Y.S. 555]; *National Life Ins. Co.* v. *Grady,* 185 N.C. 348 [117 S.E. 289].

See 136 American Law Reports 1516, in which it is said: "The majority of the cases . . . have taken the position that such a provision relates only to changes in the condition of the insured occurring after the making or acceptance of the application for the policy and before its date, issuance, or delivery, at least where in connection with the application there was an examination of the insured by a physician representing the insurer."

*Law Reviews—Delivery in Good Health as a condition precedent to insurer's liability.* (24 Iowa L.Rev. 787. 8 Washington & Lee L.Rev. 94.)

*The Delivery in Good Health Clause in Life Insurance Policies.* (34 Columb.L.Rev. 1508. 3 Univ. of Pittsburgh L.Rev. 159.) In this review it is stated: "Included among the majority (*apparent good health*) are Georgia, Illinois, Indiana, Kansas, Kentucky, Mississippi, New York, and Oklahoma. Among the minority (*actual good health*) are Massachusetts, Minnesota, Texas, and Washington." (11 Temple L. Quarterly 262.)

This court is in agreement with the trial judge when he said in his memorandum of opinion:

"In finding for the plaintiff the court is attempting to follow an enlightened view. ■ It is a matter of common knowledge that science is constantly increasing the life expectancy of everyone. Concurrent with this increase in life expectancy, is an increase of incidence of the catastrophic diseases such as cancer. ■ It is also a matter of common knowledge that these diseases frequently are not detected until they have reached the 'advanced stages.' "

■ It seems to this court that to follow the harsh Massa-

chusetts rule would leave a gap in time in every life insurance policy, in which the beneficiaries would not be protected with insurance. For even though the premiums for the policies had been paid, even though the insured had complied with every covenant binding upon him in the insurance contract, the policies would be void because lurking undetected within his body was some disease which would kill him sometime.

It seems to this court that it would be wrong to allow this difficult and sometimes perplexing question of fact to be at large in the contract of life insurance, and to subject beneficiaries to the delay, expense, and uncertainties of determining that fact in legal proceedings. It seems to this court that in the interest of justice a time should be fixed and certain beyond which that fact shall not be at large, unless fraud or misrepresentation, or some other lawful defense, be present.

Cases involving the issues of fraud and misrepresentation are not controlling under the facts of this case. However, a number of such cases have been cited in the briefs. ■ So it is pertinent here to say that it has long been the rule in this state that in the absence of fraud or deceit the mere fact that representations of an insured were proved to be unfounded by subsequent events would not void a policy of life insurance. In *Chase v. Sunset Mut. Life Assn.*, 101 Cal. App. 625 [281 P. 1054], application for a policy of life insurance was made April 5, 1927. The policy bears date April 11th. The insured had an attack of illness April 7th, which recurred April 11th. He was operated on on April 16th, and died on April 22d.

The insurance company defended on the ground that representations of the insured were fraudulent, and that he fraudulently concealed the fact of his illness before the delivery of the policy.

The trial court found that the decedent had no knowledge or apprehension that his life or his health was seriously endangered.

In this case also "retrospectively" it appeared that the decedent had heart trouble which probably could have caused his death, along with a gallstone.

In affirming the judgment for the beneficiary of the insurance, the District Court of Appeal says: "If . . . such representations were honestly made, and were justified by the decedent's then knowledge of his physical condition, the

mere fact that the representations of the insured were proved to be unfounded by subsequent events, in the absence of fraud or deceit, would not void the policy.'' (P. 631.) (See cases collected in 26 West's Cal. Dig., Ins. 291 [3].)

These views find support in two settled principles of our law: (1) Insurance policies are to be construed liberally in favor of the assured (*Wells, Fargo & Co.* v. *Pacific Ins. Co.*, 44 Cal. 397) ; and

(2) Courts are disinclined to construe the stipulations of a contract as conditions precedent, unless compelled by the language of the contract plainly expressed. (*Victoria S. S. Co.* v. *Western Assur. Co.*, 167 Cal. 348 [139 P. 807] ; 12 Cal. Jur.2d § 171, p. 389.)

For the foregoing reasons this court concludes in this case that from the time they were delivered, there being no fraud or misrepresentation, or other legal defense, decedent was insured, and his beneficiary is entitled to the proceeds of the policies.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied February 15, 1955, and appellant's petition for a hearing by the Supreme Court was denied March 22, 1955. Carter, J., did not participate.