No. 30,190.

F. Y. Van Ross, as Administratrix of the Estate of Walter Williams, Deceased, *Appellee*, v. The Metropolitan Life Insurance Company, *Appellant*.

(7 P. 2d 41.)

Opinion filed January 30, 1932.

*Chester Stevens,* of Independence, and *Le Roy A. Lincoln,* of New York, N. Y., for the appellant.

*W. N. Banks, O. L. O'Brien* and *Walter L. McVey,* all of Independence, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This appeal is by the defendant life insurance company from a judgment rendered against it upon an industrial

insurance policy for $500 in an action brought by the administratrix of the estate of the insured. It involves mainly the defenses of the company based upon misrepresentations of the insured in the application and those based upon a breach of conditions appearing in the policy itself, and also additional questions as to the pleadings, the admission of evidence, the sufficiency thereof, the giving and refusal of instructions and the overruling of the motion for a new trial.

The amended petition was in the usual form, alleging the essentials as to the issuance of the policy, attaching a copy, the payment of all premiums, the furnishing of proof of-death and the denial of liability by the defendant company for the reason that the decedent was not in sound health but had had treatment for a serious disease prior to the writing of the application, and this information was not given on the application.

The answer admitted the issuance of the policy, denied that the amended petition stated facts sufficient to constitute a cause of action, denied the allegations thereof generally and alleged that certain answers of the insured in the application were untrue and were misrepresentations made by the decedent willfully and intentionally to conceal and omit the truth and for the purpose of deceiving the defendant company, particularly as to his being in sound health at the time of the application, that he had not within two years been attended by a physician for any serious disease or complaint and that he had never had disease of the kidneys, and alleged the facts to be to the contrary. In reply the plaintiff plead a general denial and alleged that—

"Said plaintiff denies that said Walter Williams, prior to the making of the written application set forth in said answer, had been afflicted and suffering with uræmia and denies that for a long time prior to the date of said application he had been afflicted and suffering from purulent cystitis and denies that at the date of said application and for a long time prior thereto he had been afflicted and suffering from stones in the bladder.

"Said plaintiff states that said Walter Williams did, prior to the issuance of said policy to him, execute a written application to the Metropolitan Life Insurance Company and that exhibit A attached to said answer is a copy thereof; that said application was prepared and written out by the agent and representative of said company, J. L. Miller; that J. L. Miller was well acquainted with said Walter Williams and had known him for several years; that Walter Williams on or about April 6, 1929, had been ill and was attended by Dr. D. H. Davis, of Independence, Kan., who diagnosed his trouble as

cystitis or stones in the bladder; that said Walter Williams was confined to his home only a few days, but was under the care of said Doctor Davis to May 8, 1929; that he returned to his ordinary and usual work and had no recurrence of said trouble until his last illness; that said Walter Williams at the time of making said application did so in good faith, believing that he was entirely cured and well from said attack; that at the time of making said application the said agent of the defendant company above named was informed by said Walter Williams of the fact that he had had an attack of stones in the bladder or cystitis about April 6, 1929, and that he had been treated by Dr. D. H. Davis therefor, but that the said J. L. Miller failed and neglected to include said facts in said statement; that the said agent of said defendant company, J. L. Miller, was in the home of Walter Williams at the time the said Walter Williams had said attack of cystitis or stones in the bladder about April 6, 1929, and was well informed and well knew that at said time the said Walter Williams was treated by Dr. D. H. Davis.

"Plaintiff denies that the said Walter Williams willfully and intentionally concealed any facts from the defendant or intentionally and willfully omitted the same from said written application or that he concealed the fact of his treatment for said disease, but alleges and states that he in fact and in truth made a true statement to said agent, informing him of the facts above set out, and that the said agent of the said defendant company, at the time he took said application, knew of his own knowledge of the fact that the said Walter Williams had suffered from an attack on or about April 6, 1929, of cystitis or stones in the bladder, and that he had been treated for the same by Dr. D. H. Davis.

"That the said defendant, notwithstanding the facts above set forth, issued said policy of insurance to Walter Williams and accepted and received the premiums thereon up and until the time of his death, and by reason of said fact is estopped to set up or assert the defenses attempted to be set up in paragraphs 3, 4 and 5 of its said answer."

The motion of the defendant to strike out this part of the reply was overruled and likewise its objection to the introduction of evidence. The demurrer to the evidence of plaintiff was overruled and after the introduction of the evidence of the defendant and the giving of instructions the jury returned a general verdict for plaintiff and answered eight questions as follows:

"1. Do you find from the evidence that Walter Williams died from uræmia resulting from gallstones in the bladder? A. Yes.

"2. Do you find from the evidence that in October, 1928, said Walter Williams was treated by a physician for gallstones in the bladder? A. Yes.

"3. Do you find that Walter Williams was confined to his bed on account of gallstones in the bladder between April 6 and May 8, 1929? A. Yes.

"4. If you answer the last question 'Yes,' state the length of time he was confined to his bed between said dates. A. Thirty-two days.

"5. Was Walter Williams treated by a physician for gallstones in the bladder between the period of April 6 and May 8, 1929? A. Yes.

"6. If you answer the last question 'Yes,' did the physician call at his home to treat him for said disease? A. Yes.

"7. If you answer the last question 'Yes,' did the physician make several visits to his home for the purpose of treating said Walter Williams for gallstones in the bladder? A. Yes.

"8. Did Walter Williams call at the office of Dr. D. H. Davis during the summer of 1929 and prior to the issuance of said policy for consultation and treatment for gallstones in the bladder? A. No."

The evidence shows that the insured had been ill with kidney trouble in October, 1928, and again in April and May, 1929; that Doctor Davis had treated him on both those occasions; that he resumed his work on May 8 and had no further treatment or consultation with the doctor until he caught a cold and was taken ill on December 14, when Doctor Davis again attended him until his death on December 30. The application was made during the interim, about August 1, and the policy was dated September 1. The evidence shows that the agent Miller, who took the application, called at the decedent's home while he was sick, to collect insurance premiums from the wife of decedent, and talked with the decedent while he was sick and confined to the house, that the decedent told the agent when he was writing the application, as related by one of the witnesses in the room at the time, that he had been under the doctor's care—"You remember when I was sick down here," and the agent said, "Well, you are not under the care of a doctor now, are you?" To which he answered, "No."

The doctor testified that kidney trouble was the disease which caused his death, and gave it as his opinion that he had not in the intervening time fully recovered, although it was a common disease, "and if you ever recover from it you never have another attack. If all of the stones escape and there is no new formation, the patient generally recovers, but you could not tell that without an examination." The doctor further stated that he would say he was not in sound health during the year 1929.

The evidence further shows that the insured signed the application without reading it or having it read to him, and that he was then examined by the company's physician.

The appellant very properly claims there is a clear distinction between the obtaining of a contract through misrepresentations as to facts, and making the existence of such facts a condition upon which the contract by its express terms is dependent. In other words, the policy is in and of itself an entire agreement or contract, and the

conditions therein plainly expressed are in the nature of warranties. Applying this rule to the features in the instant case, if the decedent was not in fact in sound health at the date of the policy, had in fact had disease of the kidneys or had been attended by a physician for any serious disease or complaint within two years before the date of the policy, the conditions of the policy would render the policy void at the option of the company, regardless of the question of whether or not there were misrepresentations. We think this is the correct rule as to the sound health feature, but the other two features are subject to the modification pleaded in the reply, that the insurance company knew all about them when issuing the policy. If the company knew the facts as to these two matters before and at the time of writing the policy it would be unfair and unreasonable to permit it later to declare the contract void on account of things it knew when it issued the policy.

As to the misrepresentation contained in the application with reference to never having had kidney trouble nor being attended by a physician for two years prior for a serious disease or complaint, the findings of the jury are in full accord with the admissions of the reply, that the application did not correctly state the facts as given to the agent by the insured. And the general verdict for plaintiff embraces within it the findings in favor of the plaintiff upon all the issues raised by the pleadings, which include the giving of the correct answers to the agent of the company on both these points and his failure to correctly enter them upon the application. The evidence of the plaintiff was amply sufficient to support the plaintiff's allegations on these points, and the only testimony offered by the defendant was that the agent Miller, who wrote the application, knew the insured and had talked with him during his illness in the spring. His evidence was directly to the contrary of that given by plaintiff's witnesses, and the jury had the right in weighing it to give greater credence to the witnesses of the plaintiff. There was a direct conflict in the testimony as to these matters of misrepresentation and the jury, with the approval of the trial court, has decided that conflict in favor of the plaintiff. That feature of the case is therefore settled as far as the appeal is concerned if there was sufficient evidence to support the verdict, and we have already said there was. In the case of *Tool v. National Life and Accident Ins. Co.*, 130 Kan. 117, 285 Pac. 580, where the answers made to the questions in the application were alleged to have been made falsely,

and apparently some of the circumstances justified a suspicion of bad faith, the court said:

"The responsibility rested on the district court to say, not whether there was some evidence to support the findings, but whether the findings reflected the truth of the case under the evidence. The medical testimony was not controverted by medical testimony, and notwithstanding the evidence strongly tended to show that this is a rank case of deathbed insurance, the district court approved the findings. That concludes the controversy over the facts so far as this court is concerned." (p. 119.)

It is unnecessary to cite further authorities on this subject from the long line of uniform decisions.

In this connection the allegations of the insufficiency of the plaintiff's amended petition and the objection to the introduction of any evidence may be considered. The argument made in support of the allegations and objections being that the proof of death attached to the amended petition, showed the death was from the same disease from which the decedent suffered on earlier dates within two years, viz., disease of the kidneys. This contention might have been forcible when the amended petition was the only pleading on file, but when it was heard on the objection to the introduction of any evidence the answer and reply were on file which enlarged and extended the issues so that the proof of death and its cause were not then the controlling features of the case.

The overruling of the motion to strike out part of the reply and the objection to the introduction of evidence thereunder is strongly urged as error by the appellant, citing among others the following cases from Kansas and other jurisdictions in support of its contention: *Priest v. Life Insurance Co.*, 116 Kan. 421, 227 Pac. 538; *Klein v. Farmers & Bankers Life Ins. Co.*, 132 Kan. 748, 297 Pac. 730; and *Mutual Life Ins. Co. v. Hilton-Green*, 241 U. S. 613, 60 L. Ed. 1203.

The Priest case was in many particulars like the one at bar. The disease was kidney-and-bladder trouble, and the defendant alleged the insured was not in sound health when he made his application, had been treated for that trouble before and gave false answers to the agent, but the case differed in many particulars. The insured was himself a physician. The reply, in addition to a general denial, alleged how the answers were given by the insured in writing them on a blank application and placing his signature on another blank containing no answers, and sending both of these applications by mail to the agent. It was there held:

"The evidence is held not to establish conclusively, so as to take the matter from the jury, that an applicant for insurance was in ill health, or that he knowingly made false representations bearing on his condition." (Syl. ¶ 2.)

The jury had rendered a general verdict in favor of the plaintiff and had answered a number of special questions about his having kidney-and-bladder trouble before and concerning his general health by stating, "We don't know," and "We don't think so," and the trial court refused to send the jury back and require more specific answers, and for this reason and others the case was returned for a new trial. The reply was similar in effect to the one in this case, and evidence was introduced, as the record shows, on the issues thus made.

It is urged that the court in the Priest case stated that where false answers concerning the health of the insured were knowingly made by the applicant the fact that the agent knew they were false would not prevent the company from resisting payment on the ground of such fraud. That was evidently the theory upon which the case at bar was tried by the defendant, but the defendant failed to convince the jury and the trial court that the answers given by the applicant in this case were false.

In the Klein case no questions on the pleadings or the introduction of evidence were involved, but the court recognized the fact that knowingly giving untrue answers to material questions by the applicant was a ground for annulment of the policy. In that case the trial court sustained a demurrer to the plaintiff's evidence, which in effect was a finding that the answers were untrue.

In the Hilton-Green case a reply was filed not denying the allegations of the answer as to misrepresentations except by general denial, but alleging that if the application contained misrepresentations the actual circumstances were known to the company when the policy was written. A trial was had upon the issues thus formed and evidence was introduced thereunder and a verdict was rendered for plaintiff, but the court reversed the judgment, not because of the pleadings or the introduction of evidence, but because there was no evidence to support the verdict.

We are not persuaded that the reply was improper nor that the evidence introduced in support of its allegations should have been excluded. In the case of *Moreland v. Security Benefit Association,* 112 Kan. 587, 212 Pac. 93, the following ruling was made as to the evidence introduced on a similar proposition:

"Over defendant's objections, the same witnesses were asked whether similar questions were read to them when they made out their applications, to which they answered, 'No!' *Held,* .the evidence was admissible for the pur-·pose of throwing whatever light it might cast upon the manner in which the application of the deceased was prepared and signed, the weight to be given to the evidence being for the jury to determine." (Syl. ¶ 3.)

In the case of *Blades v. Insurance Co.,* 116 Kan. 120, 225 Pac. 1082, it was said:

"In an action on an insurance policy where it is contended that the representations purported to have been made by the insured in an application for insurance prepared by a representative of the insurance company did not correctly state the questions asked and answers made by the applicant, oral evidence is admissible to show the questions actually asked and the answers given." (Syl. ¶ 1.)

In the case of *Shinn v. Benefit Association,* 102 Kan. 134, 169 Pac. 215, it was said:

"This court by a long line of decisions is on record to the effect that when an insurance agent seeking business and finding a prospect puts him through the categorical examination provided by the company, and leaves out such answers given by him as would work a refusal of his application, and the company takes his money and issues his policy, it, and not the applicant, is held responsible for the situation thus arising. When, as testified to in this case, the customer makes truthful answers, and the paper supposedly containing them is shoved across the table to him for signature, and he immediately signs without reading, it does not lie in the mouth of the company to criticise him for trusting the honesty of its agents to write the answers as given. And if it is revealed that the application contained warranties and admissions of the agent's lack of authority, this cannot avail the company whose agent has not called the customer's attention thereto, but who has received his signed application knowing that he has no knowledge of what it contained.

"This rule, so manifestly in accord with common sense and fair dealing, has abundant support in the decisions of other courts, and still meets with the approval of this court." (p. 136. See, also, *Priest v. Life Insurance Co.,* 116 Kan. 421, 227 Pac. 538.)

The general rule is that knowledge of the agent soliciting applications for insurance is knowledge of the company.

"It is the duty of such an agent to prepare the application of a person solicited to insure so that it will accurately and truthfully state the result of the negotiations, and the agent's failure to do so is in legal effect the fault of the company.

"If such an agent fails to write into the application an agreement which he has made with the applicant respecting the terms of the insurance desired his knowledge of the agreement is in legal effect the knowledge of the company." (*Pfiester v. Insurance Co.,* 85 Kan. 97, syl. ¶¶ 3, 4, 116 Pac. 245.)

"Where the fact is correctly stated by the applicant but a false answer is written into the application by the agent of the company, without knowledge or collusion upon the part of the applicant, the company is, according to the generally accepted rule, bound." (32 C. J. 1290.)

"It is the general rule that an insurance agent in making out an application for insurance acts as the agent of the insurer and not of the insured, and if the insured makes proper answers to the questions propounded the insurer cannot take advantage of a false answer inserted by its agent, contrary to the facts as stated by the applicant." (14 R. C. L. 1174. See, also, *Insurance Co. v. Davis,* 59 Kan. 521, 53 Pac. 856; and *Continental Ins. Co. v. Pearce,* 39 Kan. 396, 18 Pac. 291.)

The contention of the appellant that there was collusion between the insured and the agent to conceal the true facts from the defendant company lacks proof in two ways: first, there is no evidence whatever showing any intention on the part of the insured to conceal or misrepresent the truth; and second, the company relies wholly in this action upon the veracity and credibility of the agent as its only witness. Collusion requires a united or joint action to mislead or deceive a third party. (32 C. J. 1290.) True, this court has held that insurance companies are not always bound by the knowledge of their agents, but such exceptions seem to be where untrue answers to material questions were knowingly given by the applicant, as in the case of *Klein v. Farmers & Bankers Life Ins. Co.,* 132 Kan. 748, 297 Pac. 730.

We think the question of being in sound health on the date of the policy is subject to the provisions of the contract itself apart from anything that might have occurred in connection with the making of the application, and unless the insured was in fact in sound health on the date of the policy it would be void at the option of the company. The evidence of all the witnesses except one, including the agent of the defendant, was that he was in sound or good health. Some of them said he walked erect; others that he worked regularly from May 8 to December 14. The one exception was Doctor Davis, his physician, who attended him in all his illness, who said he had not fully recovered, and that he was not in sound health during the year 1929. This court has said in the recent case of *Klein v. Farmers & Bankers Life Ins. Co.:*

"What is good health as used in the insurance contract like the one in question? It is not apparent good health, nor yet a belief of the applicant that he is in good health, but it is that he is in actual good health. Of course, slight troubles or temporary indisposition which will not usually result in serious consequences, and which do not seriously impair or weaken his consti-

488

tution, do not establish the absence of good health, but if the illness is of a serious nature, such as to weaken and impair the constitution and shorten life the applicant cannot be held to be in good health." (p. 753.)

In the case of *Miller v. Knights and Ladies of Security,* 103 Kan. 579, 231 Pac. 1016, the court held the instruction given was erroneous and at length defined the term "good health" as follows:

"Good health, and not the appearance thereof or the reasonable belief therein, was the essential condition in this case. . . . It was not a question of good faith, but one of actual good health . . . the member must, aside from slight troubles or infirmities not usually ending in serious consequences, have been in fact free from any disease or ailment which tended seriously or permanently to weaken or impair her constitution." (p. 583.)

In *Pickens v. Security Benefit Association,* 117 Kan. 475, 231 Pac. 1016, numerous decisions on this subject were carefully reviewed and the definition given in the Miller case was approved and followed.

The instruction given to the jury in the case at bar followed the definition given in the Miller case, and was as follows:

"By the words sound health is meant that, aside from slight troubles or infirmities not usually ending in serious consequences, the insured must have been free from diseases or ailments tending seriously to weaken or impair his constitution."

We think there was sufficient evidence to support the finding of the jury of sound health, necessarily included in its general verdict, especially when the other evidence of Doctor Davis is considered, where, as set out in the early part of this opinion, he said it was a common disease and "if you ever recover from it you never have another attack" and any new formation could not be detected without an examination.

Appellant cites cases where the disease was tuberculosis or cancer, which apparently belong in a different class from that of kidney disease, as described by Doctor Davis, from which there is full and complete recovery, and his explanation of it takes it out of the class "usually ending in serious consequences."

It has also been held that sound health is a comparative term, and where the insurance company makes a medical examination of the applicant before issuing the policy, as was done in this case, exactions under the forfeiture provision are not so great. Instruction No. 12, covering this subject, is criticized as going too far as a proposition of law, but considered in connection with the definition of sound health given in instruction No. 10, above quoted, and as

applied to the testimony as to the nature and character of the disease here involved, we think it is not erroneous.

The criticism of other instructions considered and, with one exception, we think the instructions given correctly state the law applicable to the facts in this case. The one exception is No. 13, having reference to the provisions in the policy being brought to the notice and attention of the insured, and we think that it overstates the correct rule in this regard, but under the facts in the case we do not regard it as being prejudicial error. (*Whitesell v. Street Railway Co.*, 115 Kan. 53, 222 Pac. 133.)

We find no error in the overruling of the motions to set aside answer to question No. 8, to render judgment for defendant notwithstanding the general verdict and to grant a new trial.

The judgment is affirmed.