### NATIONAL LIFE & ACCIDENT INS. CO. v. WICKER.

No. 25645. March 26, 1935.

Biddison, Campbell & Biddison and Harry Campbell, Jr., for plaintiff in error.

Chas. W. Wortman, for defendant in error.

PER CURIAM. This is a suit by Elijah H. Wicker on an insurance policy issued by the National Life & Accident Insurance Company, upon the life of James N. Wicker, deceased. The policy was issued on the 12th day of December, 1932, and the insured died on the 17th day of April, 1933. The only question at issue in this case is as to the law applicable to certain provisions of the policy which provide as follows:

"No obligation is assumed prior to the date hereof, by this company. If the insured is not alive or not in sound health on the date hereof; or if before the date hereof the insured has been rejected for insurance by this or any other company, order or association, or before said date has had any pulmonary disease, or chronic bronchitis or cancer, or disease of the heart, liver or kidneys, unless such rejection or previous disease is specifically recited in the 'space for indorsements' in a waiver signed by the secretary, then in any such case, the company may, within the contestable period, declare this policy void and the liability of the company shall be limited to the return of the premiums paid on the policy."

The company contends in the answer that on the date of the policy the insured was not in sound health, and for a long period of time prior to said date the assured had been continuously affected with and suffering from pulmonary tuberculosis, or other pulmonary disease, and had been continuously suffering from chronic bronchitis, etc., all of which was unknown to the company until after the death of the said James N. Wicker.

The plaintiff in the case contends that because the application showed that the deceased had an attack of pneumonia in 1930, the company had waived that provision of the policy by the acceptance of the premiums, and by the delivery of the policy, and the only question in the case is as to the law as applied to the provision of the policy hereinbefore set out, and the fact as to the man's health at the time of the delivery of the policy.

The court, in the instruction to the jury, submitted to the jury the question as to the health of the defendant at the date of

the delivery of the policy in instruction No. 6:

"You are instructed that if you find from a preponderance of the evidence that the insured, James N. Wicker, was not in good health, or sound health, as hereinafter defined, on the date of the policy, that is, on the 12th day of December, 1932, then you are instructed that the policy of the insured sued on herein did not become effective or binding except that the defendant would be required to restore or refund the premiums paid, with interest thereon at 6% from the date of payment."

This instruction was a correct pronouncement of the law, under the facts.

The plaintiff in error, the defendant below, in its brief says that it does not rely upon any allegation of fraud in the answer, and is basing its stand squarely upon the contract in regard to the health of the deceased and without reference to his conduct, and rests solely upon the condition of the health of the deceased at the time of the delivery of the policy.

The Supreme Court of this state, in the case of Mid-Continent Life Insurance Co. v. House, 156 Okla. 285, 10 P. (2d) 718, in commenting upon the phrase "good health", on page 289, in said opinion, and in quoting from other cases, uses the expression:

" 'The phrase "good health", as used in its common and ordinary sense by a person speaking of his own condition, undoubtedly implies a state of health unimpaired by any serious malady of which the person himself is conscious. He does not mean that he has no latent disease of which is he wholly unconscious. If by the phrase "good health" an insurance company desires to exclude every disease, though latent and unknown, it must do so by distinct and unmistakable language.' (Greenwood v. Royal Neighbors, 118 Va. 329.)

"It is doubtless competent for a life insurance company in its policies to take the expression 'sound bodily health' out of its common meaning and make it exclude every disease, whether latent and unknown or not (assuming that any person would ever accept a policy of that kind), but it must do so in distinct and unmistakable language. The mere statement by a party that he warrants himself to be in sound bodily health is not sufficient. Greenwood v. Royal Neighbors, supra.

" 'Good health means apparent good health without any ostensible or known or felt symptom of disorder, and does not exclude the existence of latent unknown defects.' "

The court in the same case, on page 290, made this statement, after quoting the following provisions of the policy:

"That the company shall not incur any liability upon this application until the policy has been issued by the company and the first premium has actually been paid to and accepted by the company or its authorized agent and the policy has been delivered to and accepted by me during my lifetime and good health."

—that such provision in the policy was for the benefit of the insurance company, for the purpose of protecting the insurance company from the date of the issuance of the policy and its delivery to the assured by reason of any new element of risk on account of a change of condition of applicant occurring after the company's investigation has been made. If there are provisions in any insurance policy "which 'are reasonably subject to conflicting interpretations, * * * they must be construed strictly against the company. They must be given such construction as will effectuate and sustain, rather than defeat, the object of the parties in entering into them.' "

In the same case, quoting from the New York Life Insurance Co. v. Smith, 91 So. 456, the Supreme Court of Mississippi said:

"Where an application for a life insurance policy, which by its terms became a part of the contract of insurance, provides, among other things, that the policy applied for shall not take effect until delivered to and received by the insured during his lifetime, 'while in good health,' and the evidence shows that insured, although not in good health, was in the same condition of health at the time of the delivery of the policy as he was at the time of his application therefor, the said provision in the application was not violated, because it only meant that the defendant's health had not undergone any change between the date of the application for and the delivery of the policy."

And again, in the concluding part of this opinion, the court says:

"There is nothing in the record to indicate that there was any change in the condition of the deceased from the time of making her application to the time the policies were delivered to her."

In the case of Sovereign Camp of W. O. W. v. Jackson, 57 Okla. 318, 157 P. 92, the Supreme Court of this state says:

"The question as to whether deceased was in good health when the benefit certificate was issued to him or not is purely a question of fact," and in that opinion discusses what the words "good health" mean.

The court in the case at bar submitted

that question to the jury under all the evidence in the case, and the jury in its verdict found that the deceased at the time of the delivery of the policy was in good health, as the words are construed by the courts of this state.

The plaintiff in error makes some complaint of the expression of the court before the jury in the trial of the case, when the plaintiff in error sought to prove the custom of insurance companies, which criticized conduct of the court as objected to is on page 93 of the case-made; the question at that time was, What the custom of the insurance companies was in cases where the insurance company knew of the bad health of the assured and whether the company would have delivered the policy. We think that the question was improper. We think the court should have sustained the objection to it, as, under the contention of the plaintiff in error, the sole question in the case was whether or not the deceased was in good health at the time of the delivery of the policy, and that being true, the question as to what the custom of the insurance company was in such cases had nothing whatever to do with the case. We do not think that the action of the court or the remark of the court was prejudicial, and certainly when he later permitted the plaintiff in error to make the proof, and stated on page 95 of the case-made that the court might have been in error, and that he was going to back up on his ruling, and "that you may disregard the remark that the court made at that time", cured any possible error that might have been made.

In 161 Okla. 77, 17 P. (2d) 401, appears the case of National Life & Accident Insurance Co. v. Shermer, which is very much like the case at bar. In the case referred to it appears that the application was dated November 21, 1927, the policy was delivered December 5, 1927, and the contention of the defendant was that the assured was not in good health at the time of the delivery of the policy. The court in that case stated, in quoting from a former decision of the Supreme Court, on page 78 of said opinion:

" 'When a life insurance policy containing such a provision as set forth in paragraph 1 of the syllabus has been delivered and the first premium paid, the burden of proof is upon the defendant insurance company to prove that the policy was delivered while the insured was not in good health.' " (Mid-Continent Life Ins. Co. v. House, 156 Okla. 285, 10 P. (2d) 718.)

And again on page 79, the court says:

"The defendant assumed the burden of proving not only that the policy was delivered while the insured was not in good health, but that the statements of the insured were willfully false and fraudulent and misleading."

In this case at bar the question of the good health of the assured was submitted to the jury. The burden was upon the insurance company to show that the deceased was not in good health as good health is defined by the Supreme Court of this state, and the verdict of the jury in this case is to the effect that the defendant failed to meet that burden. There is competent evidence in support of the plaintiff's theory that the assured was in good health at the time of the delivery of the policy, as defined by the Supreme Court of this state.

We find no error in the judgment of the trial court, and the judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys R. H. Stanley, A. W. Trice, and G. M. Barrett in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Stanley and approved by Mr. Trice and Mr. Barrett, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, PHELPS, CORN, and GIBSON, JJ., concur.