### HOME STATE LIFE INS. CO. v. JENNINGS.

No. 24973. Jan. 19, 1937.

Biddison, Campbell, Biddison & Cantrell and Harry Campbell, Jr., for plaintiff in error.

Commons & Chandler, for defendant in error.

WELCH, J. Plaintiff, Mrs. Grace Jennings, sued on a policy of life insurance issued to her husband, Charles H. Jennings, in his lifetime.

The policy was originally issued on November 16, 1931, and contained this provision: "No obligation is assumed by the company * * * unless on said date the insured is * * * in sound health."

The policy thereafter lapsed for nonpayment of premium and was revived and reinstated on March 7, 1932, as shown by indorsement on policy. That indorsement provided, among other things, that the policy was reinstated, "provided the insured is * * * in good health on this date."

The insured died August 8, 1932, of pulmonary tuberculosis following an illness of at least some months. The exact duration of his illness was one of the disputed facts in the trial.

The defendant company in its answer, among other defenses, alleged that on the date the policy was issued, and later on March 7, 1932, when the policy was reinstated, in truth and in fact the insured was not then in good health, but, upon the contrary, was then afflicted with the disease of which he subsequently died. This, as well as all other defenses, was denied by plaintiff's reply.

On trial there was verdict and judgment for the plaintiff.

The defendant properly excepted to the court's instructions and made proper request for specific instructions, and now urges, among other assignments of error, that the issue of the good health of the insured was not properly submitted to the jury.

We observe nothing improper in the above-quoted provisions of the insurance policy and the reinstatement indorsement, and the defendant has the right to rely upon such pro-

visions. The contrary is not here contended. It is the general rule that the purpose of a contract of insurance is to insure against future contingencies, and certainly the parties by express agreement may except from the operation of the policy present existing conditions, or by policy provisions may avoid liability for results following then existing conditions. We applied these principles in Atlas Life Insurance Co. v. Zellner, 173 Okla. 254, 47 P. (2d) 151.

When the issue was joined upon the question of the good health of the insured on the date of reinstatement of the policy on March 7, 1932, both parties were entitled to have that issue of fact presented to the jury for determination.

The trial court in instructions Nos. 5, 6, 7, and 7½ advised the jury as to the right of the defendant insurance company to a verdict if the insured had willfully and intentionally made false and fraudulent representations in his application for the insurance, or in the application to revive and reinstate the policy after the same had lapsed. These instructions were proper upon one of the defenses included in the answer, which defense specifically alleged certain false representations made by the insured in those applications, but these instructions did not relate to the defense asserted upon the above-quoted provision of the insurance policy itself and of the reinstatement indorsement.

In instruction No. 8 the trial court advised the jury, in substance, that if the insured was not in sound health and good physical condition, and if he had knowledge of such facts, then and in that event the defendant should recover. That instruction was in some measure a repetition of the preceding instructions. This is true because if the insured then was afflicted with tuberculosis and had knowledge of that fact, then he would not be justified in asserting in his applications that he was in good health and not suffering from any ailment or disease. But it cannot be said that this instruction submits to the jury the issue of fact as to the actual health condition of the insured on the date the policy was issued or thereafter reinstated. That instruction relates directly to the insured's knowledge as to his health condition, not directly to the actual fact itself of his health condition. The quoted stipulation in the policy and reinstatement requires that the insured be in good health, not that so far as he knows he is in good health.

No instruction whatever was given directing the jury to determine as a fact whether

on the date of the policy or reinstatement the insured was then in good health, or in sound health, although both parties offered evidence upon that point, and the defendant in due time expressly requested an instruction submitting that question, and properly excepted to the action of the trial court in giving instruction No. 8, and in refusing the instruction requested by the defendant company.

It cannot be doubted that defendant was entitled to assert this defense, and when both parties presented evidence upon the matter, defendant was entitled to an instruction submitting the issue of fact to the jury.

It was defendant's theory, as stated in the answer, that no liability arose on the policy by reason of the provisions of the policy and reinstatement, and a party is always entitled to an instruction submitting his theory, when that theory is supported by competent evidence.

The defendant here insists that the evidence on this point was such as to entitle defendant to an instructed verdict, but the record indicates that the case was largely tried by the plaintiff upon the same theory upon which the trial court instructed the jury, that is, that the controlling point upon this issue of fact was the insured's knowledge of his health condition, rather than the actual facts of his health condition. From the entire record we feel that the cause should be reversed, not with directions to render judgment for the defendant, but with directions to grant a new trial and properly submit the issue of fact to the jury for determination upon all of the evidence.

In this case it seems there was some confusion of the rules of law applicable to two separate defenses; one, the defense based upon alleged willfully false representations in the applications, and two, the defense based upon a provision in the policy and reinstatement indorsement, in substance, that liability was contingent upon the then good health of the insured. While these two defenses are often made in the same case, they are separate defenses and issues of fact upon each defense must be properly submitted to the jury.

The plaintiff relies upon Mid-Continent Life Ins. Co. v. House, 156 Okla. 285, 10 P. (2d) 722. Plaintiff cites no other decision of this court, and urges that the House Case requires a different conclusion here. We do not so construe that former decision. In this case there was no medical examina-

tion, and the policy was issued in the first instance and thereafter reinstated upon the agreed condition and provision as to the then good health of the insured.

While in the House Case prominence was given to the fact that there was a medical examination by the company, that the policy was issued upon that examination, and so it was reasoned that a similar provision in the policy itself as to good health was inserted to protect the insurance company from any change in the health condition of the insured between the examination and the delivery of the policy. Some of the reasoning of the court's opinion in the House Case is addressed to the application and to the representation therein contained as to the applicant's health. However, there is nothing in that opinion designed to destroy the right of the insurance company to rely upon the defense which the defendant in this case presents upon the quoted provision as to its liability. And the rules of law stated in the syllabus in that case are not contrary to our conclusion here. Paragraph 1 of the syllabus in the House Case refers to the application for insurance and to the protective feature to the company of the good health provision in the policy. Paragraphs 2 and 3 state rules applicable to the case at bar in the following language:

"Whether a person is in good health as that term is used in its ordinary meaning at the time of the delivery of an insurance policy must depend upon the facts and circumstances of each given case and cannot be determined by any general rule. Such questions are for the determination of a jury or the court sitting as a jury as the trier of the facts.

"When a life insurance policy containing a provision as set forth in paragraph 1 of the syllabus has been delivered and the first premium paid, the burden of proof is upon the defendant insurance company to prove that the policy was delivered while the insured was not in good health."

Thus it is ruled in the House Case that upon the defense in the case at bar the burden of proof is upon the insurance company to prove that the insured was not in good health, and that such question is for the determination of the jury, yet in the case at bar the defendant company was denied a determination of this issue of fact by the jury, by reason of the failure of the trial court to properly submit the question to the jury.

In the House Case there was no indicated intention to overrule Sovereign Camp W. O. W. v. Brown, 94 Okla. 277, 221 P. 1017. In

42

the Brown Case we recognized the right of the insurance company to rely upon a similar good health provision in the insurance policy; however, we did there state, in substance, that a mere temporary indisposition might be disregarded in so far as affecting the status of a person as being in "sound bodily health," which we there observed to be a comparative term. The point in that case of interest here is that we there recognized the validity of such a contract provision.

Likewise in the House Case, supra, there was no indicated intention to overrule Sovereign Camp W. O. W. v. Jackson, 57 Okla. 318, 157 P. 92. In the Jackson Case we fully recognized the right to rely upon the good health provision or stipulation in the insurance policy, distinguishing, however, between a slight indisposition, in that case a slight cold, and a serious malady. In that case the slight cold did thereafter develop into pneumonia, which in turn resulted in the death of the insured. But it was held that the liability was not avoided, since upon the date in question the ailment of the plaintiff was then no more than a slight indisposition or a slight cold. We may infer from the opinion in the Jackson Case that if upon the date in question the insured had then been afflicted with a serious attack of pneumonia, from which he thereafter died in due course of the disease, the insured then would not have been in good health or in sound health on the controlling date. In the Jackson Case it seems that the court properly considered as the determining factor the actual or true state of the health of the insured as distinguished from his then opinion as to his health; thus recognizing the right of the defendant company to prevail if it could be established that on the controlling date the insured was in fact afflicted with a fatal malady, without requiring that the company go further and show that the insured had been informed and then knew that he was so afflicted.

It is to be assumed that in the Jackson Case, supra, the jury was correctly instructed as to the duty to determine the fact of good health which was in issue. And in the House Case, supra, the jury was expressly instructed to determine the issue of fact whether the insured was in good health, without regard to his knowledge or opinion with reference thereto.

We have repeatedly held, in substance, that whether insured is in good health or sound health on the controlling date depends on the circumstances of each case, and or-

dinarily is for determination by the jury or the court sitting as a trier of the facts. National Life & Accident Insurance Co. v. Wicker, 171 Okla. 241, 43 P. (2d) 50. In that case it is to be noted that the jury was expressly instructed to determine from the evidence whether the insured was in good health on the controlling date, and the right of the defendant to rely on that defense was not made to depend upon the knowledge of the insured or his opinion as to his then condition.

Most of our former decisions, if not all of them, have dealt with or discussed the term "good health" as used in the application for insurance. And in testing the application to determine whether there was any willfully false representation it is important, if not necessary, to direct the inquiry to the knowledge or good faith opinion of the applicant as to his then good health or freedom from any serious malady. For if the applicant is going about his daily labor and has no reason to believe, and in good faith does not believe, that he is afflicted with any serious malady, and has no reason to know and does not know of any serious impairment of his health, then he is justified in representing himself to be in good health, and in such case he would not be guilty of a fraudulent or willfuly false representation, even if it were then true that he was actually, but wholly unknown to him, then afflicted with a serious malady. But where the parties use the expression "good health" in a contract, as in the insurance policy, we should follow the general rule of giving to the language its ordinary and reasonable meaning, and should construe such expression to refer to actual good health. There is in such case nothing to indicate that the parties intended merely the knowledge or opinion of the insured as to his freedom from serious malady. It seems clear that no injustice should result from such rule, especially when the distinction is recognized, as it is in this jurisdiction, between the health status of one who is suffering from a serious or fatal malady and one who is suffering from a mere indisposition. It may be said that one suffering only a slight indisposition, as in Sovereign Camp W. O. W. v. Jackson, supra, is in good health within the meaning of the term as used in the insurance policy, but, on the other hand, if a person is actually afflicted with a serious and deadly malady of which he thereafter dies in due course of the disease, then it cannot be said that he was in good health or in sound health at any time after he was actually seized or afflicted.

with the deadly malady, and this must be so, irrespective of the time when the individual himself first comes to know or realize his dangerous condition. If we recognize the right of the parties to so use the term "good health" in contracts and insurance policies, as we have recognized it consistently heretofore, then there is no reason to so construe such stipulated provision as to permit a person actually suffering from a deadly malady, which can be established by proof, to avoid the provision in the policy merely because it cannot further be established by affirmative proof that he had knowledge that he was so afflicted.

So it seems that a fair distinction may be made in the use of the good health term in the application for the insurance, and the use of the same term as a stipulation in the contract of insurance itself; that is, in the one instance the intent or good faith of the applicant may be important, while in the other case the knowledge or good faith opinion of the insured as to his freedom from serious malady is at least not controlling. This court has not heretofore recognized such distinction, but we are not committed by any decision to a contrary view.

This distinction was observed by the Supreme Court of Ohio in Metropolitan Life Ins. Co. v. Howle, 56 N. E. 908-909; considering a similar case it was said:

"The condition in the policy is that there shall be no obligation assumed by the company, unless upon the date of the policy the insured, the wife, shall be alive and in sound health. The matter of life and sound health is not made to depend upon her knowledge thereof, but upon the fact itself. She might be dead and not be conscious of it, and she might be in unsound health and not know it, but either would alike defeat a recovery. The court mixed the law as to the condition in the policy with the law applicable to answers to interrogatories in the application, and thereby committed an error."

It is here urged by the plaintiff that the knowledge and intent or good faith opinion of the insured is the matter of controlling importance, and that the inquiry should be directed to that point and restricted to that point. Thus it is necessarily insisted, as applied to the facts in this case, that even though the insured was actually and seriously afflicted with pulmonary tuberculosis on March 7th, from which he thereafter died in August, he was nevertheless in sound health or in good health on March 7th, since it is not shown by proof that he had been informed or knew on March 7th

that he was so afflicted. The defendant apparently concedes that as to the application the good faith of the insured is important in determining the truth or falsity of representations, but contends that if on March 7th the insured was actually and seriously afflicted with pulmonary tuberculosis which continued and caused death on August 8th, then and in that event the insured was not in good health on March 7th, irrespective of knowledge or lack of knowledge or information on the part of the insured as to his then malady.

As to the use of the term "good health" in the insurance policy, we observe this discussion of the question by the Supreme Court of Kansas in Klein v. Farmers & Bankers' Life Ins. Co., 297 P. 730. In the opinion, prepared by Chief Justice Johnston, it was said:

"What is good health as used in the insurance contract like the one in question? It is not apparent good health, nor yet a belief of the applicant that he is in good health, but it is that he is in actual good health. Of course, slight troubles or temporary indisposition which will not usually result in serious consequences, and which do not seriously impair or weaken his constitution, do not establish the absence of good health, but, if the illness is of a serious nature, such as to weaken and impair the constitution and shorten life, the applicant cannot be held to be in good health. Miller v. Knights & Ladies of Security, 103 Kan. 579, 175 P. 397; Pickens v. Security Benefit Ass'n, 117 Kan. 475, 231 P. 1016, 40 A. L. R. 654. In a note in 40 A. L. R. 663, it is said: 'The general rule appears to be that the term "good health" when used in a policy of life insurance means that the applicant has no grave, important, or serious disease, and is free from any ailment that seriously affects the general soundness or healthfulness of the system. A mere temporary indisposition which does not tend to weaken or undermine the constitution, at the date of the policy, does not render the policy void. And it seems that an apparent condition of good health or anyone's belief that the insured is in good health is not sufficient.' This is the governing rule in our state, and a multitude of authorities are cited in its support."

It would seem that the definition or rule quoted from A. L. R. by Chief Justice Johnston is well supported by reason and authority and is sound.

In Van Ross v. Metropolitan Life Ins. Co., 7 P. (2d) 41, the Supreme Court of Kansas followed the Klein Case, and held in paragraph 3 of the syllabus that:

"Where the specific provision of a life

insurance policy makes sound health at the date of the policy a condition precedent to recovery, it is in the nature of an independent contract between the company and the insured, regardless of any incidents in connection with the application, and it makes the question of sound health one of actual fact, unless waived by proper officers of the company."

While we have held that this is an affirmative defense and that the burden is on the defendant in this jurisdiction, there appears no sound reason why we should not follow this case as to the right of the company to prevail where it is able to establish as an affirmative fact that the insured was not of sound health on the controlling date.

In Thompson v. Travelers Ins. Co., 101 N. W. 900, the Supreme Court of North Dakota held that:

"The life insurance policy upon which this action is brought contained this condition: 'This policy shall not take effect unless the first premium is actually paid while the assured is in good health.' Held that, in the absence of an estoppel, the liability of the insured depends upon the actual, and not mere apparent, good health of the assured when the first premium was paid."

In Clark v. National Life & Accident Co. (Mo. App.) 288 S. W. 944, it was held that similar provisions in life policies would prevent recovery by the plaintiff where it was shown that the insured on the date in question was afflicted with a malady which continued and caused or contributed to her death, though the insured made no intentional misrepresentation as to her health condition.

We conclude, in view of the quoted provisions of the reinstatement, that if the defendant was able to establish that the insured was actually afflicted with a fatal malady on the date of reinstatement which continued and in due course of the disease caused the death of the insured, then and in that event the insured was not in good health on the date of reinstatement, and there was no liability upon the policy, and that the defendant, in order to avoid liability, was not required to go further and establish the fact that on the controlling date the insured had specific information or knew he was so afflicted with such fatal malady. The instructions required the defendant to prove such fact or knowledge, which constituted reversible error. The issue whether insured was so afflicted on the controlling date was in controversy. There was evidence tending to show that he was so afflicted, and evidence upon the contrary.

The judgment is reversed, and the cause remanded, with directions to grant a new trial and properly submit the issue of fact for determination by the jury.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, PHELPS, CORN, GIBSON, and HURST, JJ., concur. RILEY, J., absent.