**NATIONAL AID LIFE ASS'N v. STROUP et al.**

No. 25896.   March 9, 1937.

Warren & Warren and Snyder, Owen & Lybrand, for plaintiff in error.

Anglin & Stevenson and Vernon Roberts, for defendants in error.

CORN, J. The plaintiffs' action was founded upon a mutual benefit certificate issued by the defendant company to Bertha Stroup, the plaintiffs being the beneficiaries therein. The defendant set up as an affirmative defense that the policy had lapsed on the 25th day of February, 1931, for nonpayment of the February assessment called on February 10, 1931; that thereafter on March 3, 1931, the deceased executed a certificate of good health and was reinstated on March 24, 1931, remaining in good standing until the time of her death on December 27, 1932. That in said certificate she warranted that she was in sound health, free from acute or chronic ailment of any kind, and that during the last six months she had neither consulted, nor been under the care of a physician; that at the time the certificate of good health was executed she was suffering from tuberculosis and that she had consulted and been under the care of a physician within six months prior to the execution thereof; that said statements were false and constituted a breach of warranty, and that by reason thereof said policy had not been in force since March 24, 1931. Tender was made of the premiums paid since said date.

To this answer the plaintiffs filed a reply in the form of a general denial, admitting that the assessment of February, 1931, had not been paid promptly, as the check given therefor had been dishonored, but that immediately upon notice of nonpayment of the check the assessment was paid, and that therefore the defendant was estopped to claim a forfeiture; and further specifically denying that the intestate was suffering from any illness or disease at the time of the execution of the certificate of good health.

The cause was tried to a jury, which rendered a verdict for the plaintiffs in the sum of $2,500, the full amount of the certificate. Judgment was rendered by the court upon the verdict, and for the reversal of said judgment the defendant brought this appeal. The parties will be referred to herein as plaintiffs and defendant, respectively, in the same order as they appeared in the trial court.

The defendant requested certain peremptory instructions to the jury based upon alleged breaches of warranty as aforesaid, but these were refused by the court; and upon this the defendant predicates its contention of error.

The defendant is a mutual benefit association, operating under the laws of the state of Oklahoma, and the contract sued on in this case is governed by section 10631, O. S. 1931, providing, among other things, that "benefit certificates may be issued upon the warranty by the applicant that the answers and statements to the questions as to the conditions of health of the applicant and all other representations made in the application for a benefit certificate are true and are to be used as the basis and consideration upon which said benefit certificate is issued."

Inasmuch as section 10631, O. S. 1931, makes the statements of the applicant warranties, the vital and controlling question in this case is: Was the insured in sound health at the time she executed the certificate of good health which is the basis and consideration upon which the benefit certificate was reinstated, and particularly did the insured have tuberculosis at that time? These are questions of fact for determination by the jury under proper instructions by the court.

The burden of showing that the insured was not in good health at the time the certificate of good health was executed and the policy, or benefit certificate, was reinstated, was for the defendant to prove to the satis-

faction of the jury. Duncan Life & Accident Association v. Ross, 174 Okla. 389, 50 P. (2d) 690.

The fact that the proof of death of the insured disclosed that insured died with tuberculosis is only prima facie evidence of that fact, and is not conclusive of any disease suffered by the insured at the time the warranty as to good health was executed. Duncan Life & Accident Ass'n v. Ross, supra.

It appears from the evidence that about a year prior to the execution of the good health certificate and the reinstatement of the insurance, the insured developed symptoms of lung trouble and made a trip to El Paso, Tex., for her health. She did not enter a sanitarium nor take treatments for tuberculosis, but stayed there about two months and fully regained her health and strength. At the time she signed the certificate she was enjoying good health and had not been treated for any ailment of any kind by any physician during the six months next prior thereto, although she had been examined by Dr. Harrison during that time and found to be in good health and free from any symptoms of tuberculosis. She was doing her own housework, laundry, keeping a boarder, working in her garden and tending her flowers in the yard, and had gained in weight several pounds above her normal weight. So far as the evidence shows, she acted in good faith in the execution of said certificate of good health. Several months later, however, she contracted a severe case of influenza which affected her lungs and eventually developed into tuberculosis, from which she died.

This court, in commenting upon the phrase "good health," has quoted with approval in a number of cases from the case of Greenwood v. Royal Neighbors, 118 Va. 329, as follows:

"The phrase 'good health,' as used in its common and ordinary sense by a person speaking of his own condition, undoubtedly implies a state of health unimpaired by any serious malady of which the person himself is conscious. He does not mean that he has no latent disease of which he is wholly unconscious. If by the phrase 'good health' an insurance company desires to exclude every disease, though latent and unknown, it must do so by distinct and unmistakable language. * * *

"It is doubtless competent for a life insurance company in its policies to take the expression 'good health' out of its common meaning and make it exclude every disease, whether latent and unknown or not (assuming that any person would ever accept a policy of that kind), but it must do so in distinct and unmistakable language. The mere statement by a party that he fully warrants himself to be in good health is not sufficient." Sovereign Camp W. O. W. v. Brown, 94 Okla. 277, 221 P. 1017; Mid-Continent Life Ins. Co. v. House, 156 Okla. 285, 10 P. (2d) 718; National Life & Accident Ins. Co. v. Wicker, 171 Okla. 241, 43 P. (2d) 50.

In the case at bar the question of good health of the insured was submitted to the jury under proper instructions by the court. The burden was upon the insurance company to show that the insured was not in good health as the term is defined by the Supreme Court of this state, and the verdict of the jury in this case is to the effect that the defendant failed to meet that burden. There is competent evidence in support of the plaintiff's theory that the insured was in good health at the time of the execution of the certificate of good health, as defined by former decisions of this court.

Finding no reversible error in the judgment of the trial court, the judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, GIBSON, and HURST, JJ., concur. RILEY, BUSBY, and PHELPS, JJ., absent.