## HOME STATE LIFE INSURANCE CO. v. TURNER.

No. 27642.   Oct. 25, 1938.

Hemry & Hemry, for plaintiff in error.

Beets, Zeman & Beets, for defendant in error.

DAVISON, J.  The plaintiff, Velma L Turner, sued the defendant, Home State

Life Insurance Company, on a life insurance policy issued on the life of Bertie B. Turner, the mother of the plaintiff, and secured a judgment, from which the defendant has appealed.

The insurance company set up two grounds of defense: First, it was alleged that the application for insurance contained representations that were willfully false; second, that the insured was not in good health at the time the policy was delivered to her as required by the policy contract.

The defendant alleged, in substance, in its answer and cross-petition, as to the first defense, that insured, on May 20, 1930, made written application for industrial insurance, and upon which application the policy in question was issued on June 2, 1930, without medical examination; that said application shows that insured represented that she had not been ill or had suffered from disease during the past three years; that no mental or physical defects existed, and that the application was the sole basis of the contract of insurance; that the answers were material to the risk and were believed by defendant, but were made by said applicant when she knew they were false and untrue and made to deceive said defendant insurance company, the facts being that during the months of April and May, 1930, and at other times during the preceding three years, the insured had been treated by different physicians for cancer, malignant tumor, severe hemorrhages, and other serious organic diseases, which diseases and illnesses were serious and material to the risk, and that from said cancer, death resulted on June 22, 1931.

As to the second defense, it was alleged that said application provided that no obligations should exist against defendant unless the policy of insurance issued thereunder was delivered to said insured while she was alive and in sound health, any statement to any agents to the contrary notwithstanding; and that the policy itself, as condition precedent to liability, provides:

"6. Sound health * * * no obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health"

—that said policy was delivered on June 2, 1930, while insured was not in sound health, but seriously afflicted, and that she knew her afflicted condition at the time.

The defendant further alleged that it first learned of the falsity of said statements and of the insured's true condition shortly

before the 9th day of July, 1931, at which time the defendant elected to rescind said contract of insurance and notified the plaintiff of such election and offered to return all premiums paid.

The plaintiff's amended reply alleges that defendant did not rely upon the statements made by insured, because its agents knew the facts and thereby waived the provisions of the contract and accepted the premiums for more than a year, then ratifying all the acts thus done by its agents, and that the defendant is estopped to seek cancellation and is guilty of laches and waived its grounds for cancellation. The defendant denied these allegations.

The defendant presents several assignments of error, among which is that the court erred in giving certain instructions and in failing to give others offered by the defendant relative to determining as a fact whether or not the plaintiff was in sound health on the date the insured received the policy.

The theory of the defendant on that issue being that no liability arose under the policy by reason of the provision above quoted. Evidence was submitted pro and con on that issue, and the defendant was entitled to have the jury properly instructed on that particular issue, which is entirely separate from the defense based upon alleged willfully false representations in the applications for insurance.

The record shows that the plaintiff tried her case, to a great extent, upon the theory that the controlling point on issue of fact was the fact of the insured's knowledge of her health condition, and false statements in the application, and not the actual facts of her health condition. Also, upon the further theory that the defendant did not rely upon the statements made by the insured relative to the condition of her health.

The defendant contends that the trial court erred in giving instructions numbered 3A and 4. Instruction No. 3-A is as follows:

"You are further instructed that the policy sued on in this case contains the following provisions: 'This policy is based upon an application which omits the warranty usually contained in applications and contains the entire agreement between the company and the insured and holder and owner hereof. All statements made by the insured in the application hereof shall, in the absence of fraud, be deemed representations and not warranties.'

"By reason of this provision you are in-

structed that in order for a misrepresentation or misstatement made by the insured in the application to avail the defendant as a defense in this case, the defendant must show by a preponderance of the evidence not only that the statements were not true, but that they were willfully false, fraudulent or misleading, and that in addition thereto that they were material to the risk assumed by the defendant, and that the defendant believed they were true and relied upon them in issuing the policy."

The plaintiff has presented in her brief an isolated portion of instruction No. 4 as proof of the sufficiency of the instruction on the issue of whether the insured was of sound health when the policy was issued and delivered.

In instruction No. 4, as given by the court, the jury was told that if they found "by a fair preponderance of the evidence that the insured made willful, false, fraudulent or misleading statements in said application for the policy of insurance herein sued upon, the same were material to the risk assumed by the defendant and that the defendant believed they were true and relied upon them in issuing the policy, and that the insured was not in sound health at the time said policy was issued and delivered to her, then and in that event your verdict should be for the plaintiff for the sum of $28, and for the defendant for cancellation of the policy upon its crosspetition and for costs of this action. On the contrary, however, if you believe from a fair preponderance of the evidence that certain statements were made that were not true, but that said statements were made in good faith and without the purpose to willfully mislead the defendant. * * *"

In other words, the statements in the application must be found to be willfully false, fraudulent, or misleading; the same must be found to be material to the risk assumed; the defendant must believe they were true, and the jury must believe that the insured was of unsound health at the time the policy was issued and delivered, before the defendant can have a judgment in its favor. We cannot agree with plaintiff's contention. It is very conclusive that the instructions on these issues are subject to similar objections as found by this court in the case of Home State Life Insurance Co. v Jennings, 179 Okla 39, 64 P.2d 304, wherein the court instructed the jury, in substance, that if the insured was not of sound health and good physical condition, and if he had knowledge of such facts, then the defendant should recover. We held in that case that the two issues were separate and that there was no proper instruction on the issue of the insured being in sound health at the time of the issuance and delivery of the policy. Defendant was required to prove, not only that on the particular date insured was afflicted and not of sound health, but also to prove that insured knew he was so afflicted at the time. In the instant case, the defendant was required to prove even more than that before it could prevail.

Plaintiff contends that the objection to the instruction on the issue of sound health at the time the policy was issued is governed by the holding of this court in National Life & Accident Insurance Co. v. Roberson, 180 Okla. 265, 68 P.2d 796. In that case this court distinguished between that and the case of Home State Life Insurance Co v. Jennings, supra, and said:

"In the Jennings Case we reversed the judgment for error in failing to properly submit the second ground of defense to the jury. The defendant urges there was similar error here, but we do not so find it. Here the court gave an instruction requested by the defendant that if the insured was not in sound health when the policy was issued and delivered, then, as provided in the policy, there was no liability except to return the premiums paid with interest. This instruction was not improperly burdened or conditioned as was true in the Jennings Case."

In the instant case the defendant submitted proper instructions on the direct point of sound health, but the trial court refused to give the instructions and proper exceptions were taken thereto.

In Home State Life Insurance Co. v Jennings, supra, this court held:

"In an action properly tried to a jury, each party is entitled to have his theory submitted to the jury upon proper instructions if there is any evidence to sustain it.

"It is reversible error to refuse to submit a theory of defense in a separate instruction unless it clearly appears from all the instructions given that the particular theory of defense was fully and fairly submitted in the various instructions given."

. In the same case this court quoted with approval, Van Ross v. Metropolitan Life Insurance Co., 134 Kan. 479, 7 P 2d 41, 81 A L. R. 821, syllabus 3, as follows:

"Where the specific provision of a life insurance policy makes sound health at the date of the policy a condition precedent to recovery, it is in the nature of an inde-

578

pendent contract between the company and the insured, regardless of any incidents in connection with the application, and it makes the question of sound health one of actual fact, unless waived by proper officers of the company."

And said:

"While we have held that this is an affirmative defense and that the burden is on the defendant in this jurisdiction, there appears no sound reason why we should not follow this case as to the right of the company to prevail, where it is able to establish, as an affirmative fact, that the insured was not of sound health on the controlling date."

The burden of proof was upon the defendant to establish that the insured was not in sound health, but as a prerequisite to avoiding liability, the defendant was not required to prove the additional facts that the insured knew or had reliable information relative to her existing diseased condition at the time nor to prove the falsity of the statements in the application for insurance.

The court is of the opinion that the judgment of the trial court should be reversed. The judgment is, therefore, reversed and the cause remanded for a new trial in accordance with the views herein expressed.

Reversed and remanded.

BAYLESS, V. C. J., and WELCH, PHELPS, GIBSON, and HURST, JJ., concur. RILEY, J., dissents. OSBORN, C. J., and CORN, J., absent.

RILEY, J. (dissenting). The words "sound health," as used in an insurance contract or application therefor, implies a state of health unimpaired by any serious malady of which the person himself is conscious. It does not mean that the person so described has no latent disease of which he is unconscious.

If I am correct in the above statement, the majority err, particularly in the statement of law reflected by the second paragraph of the syllabus:

"The insurer is not required to go further and establish that the insured, on the date the policy was received, knew that he was seriously afflicted with such fatal malady, or prove the falsity of the statement in the application."

It is recognized that the majority base their decision on the rule stated in the third paragraph of the syllabus of Home State Life Ins. Co. v. Jennings, 179 Okla 39, 64 P.2d 304, distinguished and avoided in the subsequent case of National Life & Accident Ins. Co. v. Roberson, 180 Okla. 265, 68 P.2d 796.

The doctrine of the Jennings Case follows the Kansas case cited therein, which case is bottomed on a sound health provision as a contractual condition precedent to liability, apparently uninfluenced by a statutory provision denoting such statements representations and not warranties. As applicable to the requirements in Oklahoma, note the case of Priest v. Kansas City Life Ins. Co. (1924) 116 Kan 421, 227 P. 538, 100 A. L. R. 366. The Jennings Case is wholly inconsistent with the Oklahoma decisions of prior and subsequent date, despite statements to the contrary in the opinion. For example, in reference to National Life & Accident Ins. Co. v. Wicker, 171 Okla. 241, 43 P.2d 50, to which reference is made on page 42, second column, 179 Okla., page 307 of 64 P.2d, in the Jennings Case, it is said:

"* * * The right of the defendant to rely on that defense was not made to depend upon the knowledge of the insured or his opinion as to his then condition."

One has but to read the first paragraph of the syllabus in the Wicker Case to observe the glaring error in the statement above quoted from the Jennings text. In the Wicker Case it is said:

"'Good health' * * * implies a state of health unimpaired by any serious malady of which the person himself is conscious. [It] does not mean that he had no latent disease of which he is wholly unconscious."

Thus, the insurer relying upon the fact of insured not being in good health was relegated in its defense to what insured knew about his condition and his apparent condition of health.

The Jennings opinion, discussing the House Case (Mid-Continent Life Ins. Co. v. House, 156 Okla. 285, 10 P.2d 718), said:

"And in the House Case, supra, the jury was expressly instructed to determine the issue of fact, whether the insured was in good health, without regard to his knowledge or opinion with reference thereto."

It is true, as shown on page 290, 156 Okla., first column, of the House Case, that the court so instructed the jury at defendant's request, but it is also true that in reference thereto this court adjudged that:

"* * * This instruction was more favorable to the defendant than the defendant was entitled under the rule announced by this court in the Stagg, Clark, Smith and Carroll Cases, supra. * * *"

Therein we determined that such a sound health provision in the contract of insurance was never intended to constitute a warranty or condition precedent to the risk, but that the same serves to protect insurer between the time of application and examination, if any, and delivery of the policy.

As stated in the Jennings Case, this court had not theretofore recognized a distinction between "good health," as used in the application for insurance, and the same term as used in the contract of insurance. The reason for this lack of prior distinction, as shown by the annotations in 100 A. L. R. 365, is that Oklahoma was wedded to the apparent and conscious sound health doctrine. In other words, we reject the view that the fact of sound health, and not insured's appearance and belief in it, is the thing that determines liability. As in the House Case, "good health" means apparent good health without any ostensible or known or felt symptoms of disorder and does not exclude the existence of latent unknown defects.

In that case we admonished that in event insurance companies desired the words "good health" to exclude latent and unknown diseases, they must do so by unmistakable language. Such was our holding in the following cases: National Life & Acc. Ins. Co. v. Shermer (1932) 161 Okla. 77, 17 P.2d 401; National Life & Acc. Ins. Co. v. Ware, 169 Okla. 618, 37 P.2d 905; Mid-Continent Life Ins. Co. v. Trumbly, 170 Okla. 639, 41 P.2d 913; National Life & Acc Ins. Co. v. Wicker, supra.

These decisions followed such cases as National Life & Acc. Ins. Co. v. Martin, 35 Ga App. 1, 132 S. E. 120, wherein the rule was announced that:

"A policy applied for and accepted in good faith cannot be avoided by proof that the malady which ultimately occasioned the death must have existed in some incipient form prior to the issuance of the policy, but unknowingly and without at that time manifesting any symptoms or effect, or in any way causing reasonable apprehension or any impairment or derangement of the system, even though, by an acceptance of the contract. the assured may have warranted himself to be in sound health."

Since:

"To hold otherwise would involve far-reaching consequences to those who have been led to rely upon the protection of policies which have been applied for, issued, and accepted in good faith." Metropolitan Life Ins. Co. v. Walters (Ky.) 285 S. W. 252; National Life & Acc. Ins. Co. v. Wallace, 217 Ky. 160, 289 S. W 219; Etter v. National Life & Acc. Ins. Co., 228 Ky. 399, 15 S.W.2d 242; National Life & Acc. Ins. Co. v. Jones, 230 Ky. 222, 18 S. W.2d 982; New York Life Ins. Co. v. Rosso, 154 Miss. 196, 122 So. 382; Continental Ill. Nat. Bk. & T. Co. v. Columbian Nat. L. Ins. Co. (7th Cir.) 76 Fed.2d 733.

There is the matter of estoppel and waiver based upon the insurance company's knowledge of the condition of health imputed to it by knowledge of the insurer's agents and the inspector's written report to the company at the time of delivery of the policy recommending the risk based on the healthy appearance of insured.

But I do not wish to detract from the importance of the rule of law herein discussed by devoting myself to the latter issue, determinative though it might be.